CC-98-263                                              1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| LUZ M. GONZALEZ RODRIGUEZ<br>    Demandante-Peticionaria<br><br>    V.<br><br>WAL-MART, INC, ET EL.<br><br>    Demandado-Recurrido | Certiorari<br><br>98TSPR164 |

Número del Caso: CC-98-263

Abogados de la Parte Peticionaria: Lic. Rafael Rivera Rosa

Abogados de la Parte Recurrida: Lic. Alberto G. Estrella
William Estrella Law Offices, PSC

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de Guayama

Juez del Tribunal de Primera Instancia: Hon. Dante Amadis Rodríguez
Sosa

Tribunal de circuito de Apelaciones: Circuito Regional VI de Caguas,
Humacao , Guayama, Panel 1

Juez Ponente: Hon. Brau Ramírez

Fecha: 12/9/1998

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Luz M. González Rodríguez

    Demandante-recurrente

        v.                                    CC-98-263        CERTIORARI

Wal-Mart Inc., et. al.

    Demandado-recurrido


**SENTENCIA**

**San Juan, Puerto Rico a 9 de diciembre de 1998**


    **Revisamos una sentencia emitida por el Tribunal de Circuito de Apelaciones mediante la cual dicho foro apelativo intermedio confirmó la decisión del tribunal de instancia de desestimar la acción de daños radicada por la parte demandante, aquí peticionaria, por entender que la misma había prescrito.**

    **El referido foro apelativo intermedio resolvió que la carta enviada por la demandante a la parte demandada <u>no</u> interrumpió el término prescriptivo aplicable por no cumplir con todos los requisitos de una reclamación extrajudicial. Expuso, además, el Tribunal de Circuito de Apelaciones que, aun cuando dicha misiva hubiera interrumpido el término, la**

demanda se radicó más de un año después de finalizado el nuevo término de prescripción aplicable, por lo que en cualquier caso la causa de acción se hallaba prescrita. <u>Confirmamos</u>.

I

En nuestra jurisdicción, de carácter civilista, la prescripción es una institución de derecho sustantivo, no procesal, que se rige por las disposiciones del Código Civil y que constituye una de las formas de extinción de las obligaciones. El fundamento detrás de dicha institución es evitar la incertidumbre de las relaciones jurídicas y castigar la inacción en el ejercicio de los derechos ya que el transcurso del período de tiempo establecido por ley, sin que el titular del derecho lo reclame, da lugar a una presunción legal de abandono. <u>Galib Frangie</u> v. <u>El Vocero</u>, Opinión y Sentencia de 6 de junio de 1995; <u>Zambrana Maldonado</u> v. <u>E.L.A</u>., 129 D.P.R. 140 (1992); <u>Culebra Enterprises Corp</u>. v. <u>E.L.A</u>., 127 D.P.R. 943 (1991).

El Artículo 1868 de nuestro Código Civil, 31 L.P.R.A. sec. 5298, dispone que las acciones para exigir responsabilidad civil por las obligaciones extracontractuales derivadas de la culpa o negligencia prescriben por el transcurso de un (1) año *desde que lo supo el agraviado*[1]. Según establecimos en <u>Culebra Enterprises Corp</u>. v. <u>E.L.A</u>., <u>supra</u>, "la brevedad del plazo de un (1) año del Art. 1868 del Código Civil, *supra*, responde a que 'la inexistencia de una relación jurídica previa entre demandante y demandado hace

---

[1] Este Tribunal ha interpretado que el inicio de dicho término prescriptivo se computa desde que el agraviado pudo ejercitar la acción, es decir, desde que tuvo conocimiento del daño y del elemento causante del mismo. <u>Colón</u> v. <u>Geigel</u>, 115 D.P.R. 232 (1984); <u>López</u> v. <u>Autoridad</u>, Opinión y Sentencia de 5 de mayo de 1993; <u>Toledo</u> v. <u>Cartagena</u>, Opinión y Sentencia de 21 de diciembre de 1992; <u>Ojeda Ojeda</u> v. <u>El Vocero</u>, Opinión y Sentencia de 26 de octubre de 1994. En ese sentido, se ha acogido la norma establecida en el Art. 1869, 31 L.P.R.A. sec. 5299, que dispone que "[e]l tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, se contará desde el día en que pudieron ejercitarse".

aconsejable que éste no deba esperar mucho para conocer la actitud que el perjudicado ha de adoptar'. [Cita omitida.]"

Ahora bien, la ley dispone y la jurisprudencia ha interpretado que los términos prescriptivos pueden ser interrumpidos. A esos efectos, el Artículo 1873 del Código Civil, 31 L.P.R.A. sec. 5303, establece que:

> "La prescripción de las acciones se interrumpe por su <u>ejercicio ante los tribunales</u>, por <u>reclamación extrajudicial</u> del acreedor y por cualquier acto de <u>reconocimiento de la deuda</u> por el deudor." (Enfasis suplido.)

Como podemos notar, la transcrita disposición legal establece <u>tres</u> medios de interrupción de la prescripción. El efecto de estos mecanismos de interrupción es que el plazo de prescripción debe volver a computarse por entero desde el momento en que se produce el acto que interrumpe. <u>Díaz de Diana</u> v. <u>A.J.A.S.</u>, 110 D.P.R. 471 (1980). Analicémoslos uno a uno.

El primer acto interruptivo de la prescripción es, sin lugar a dudas, el ejercicio de la acción ante los Tribunales, es decir, la radicación de la demanda antes de la finalización del término establecido por ley para el ejercicio de la acción.

En segundo lugar, el Código Civil dispone que se interrumpirá el término prescriptivo a través de lo que se ha denominado una <u>reclamación extrajudicial</u>. Nuestra jurisprudencia interpretativa de dicho modo de interrupción es extensa y lo ha definido como la <u>manifestación inequívoca</u> de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. <u>Feliciano</u> v. <u>A.A.A.</u>, 93 D.P.R. 655 (1966); <u>De Jesús</u> v. <u>Chardón</u>, 116 D.P.R. 238 (1985); <u>Cintrón</u> v. <u>E.L.A.</u>, 127 D.P.R. 582 (1990); <u>Zambrana</u> v. <u>E.L.A.</u>, <u>supra</u>.; <u>García Aponte</u> v. <u>E.L.A.</u>, Opinión y Sentencia de 8 de febrero de 1994; <u>Galib Frangie</u> v. <u>El Vocero</u>, <u>supra</u>; <u>Martínez Arcelay</u> v. <u>Peñagarícano Soler</u>, Opinión y Sentencia de 18 de marzo de 1998.

El fundamento de este mecanismo de interrupción de la prescripción lo establecimos en <u>Zambrana</u> v. <u>E.L.A</u>., <u>supra</u>. Allí, citando a Orozco Pardo[2], dijimos:

> "[L]a prescripción extintiva está basada en una presunción 'iuris tantum' de abandono, que admite prueba en contra; la existencia de una voluntad manifestada y probada, contraria a la prescripción, destruye aquella presunción, quedando impedida su consumación."

Aunque hemos reiterado que la reclamación extrajudicial no debe tener una forma determinada, véase <u>Acosta Quiñones</u> v. <u>Milton Matos Rodríguez</u>, Opinión y Sentencia de 5 de abril 1994, en <u>Galib Frangie</u> v. <u>El Vocero</u>, <u>supra</u>, página 922, hemos enumerado los requisitos que debe cumplir una reclamación extrajudicial para que la misma constituya una interrupción de la prescripción. Dichos requisitos son los siguientes:

(a) La reclamación debe ser <u>oportuna</u>, lo cual requiere que se realice antes de la consumación del plazo;

(b) Es necesaria la <u>legitimación</u> del reclamante. Ello requiere que la reclamación se haga por el titular del derecho o acción cuya prescripción quiere interrumpirse. Ahora bien, este requisito no debe interpretarse literalmente, sino que debe entenderse que el representante voluntario o legal del titular también puede formular la reclamación e interrumpir así la prescripción. <u>Srio. del Trabajo</u> v. <u>F.H. Co. Inc</u>., 116 D.P.R. 823, 827 (1986); <u>Zambrana Maldonado</u> v. <u>E.L.A</u>., <u>supra</u>.

(c) Se requiere también la <u>idoneidad</u> del medio utilizado para realizar la reclamación.

(d) Por último, debe existir <u>identidad</u> entre el derecho reclamado y aquél afectado por la prescripción. Según dijimos en <u>Galib Frangie</u> v. <u>El Vocero</u>, <u>supra</u>, "[e]l elemento de identidad ha

---

[2] Orozco Pardo, <u>La interrupción de la Prescripción Extintiva en el Derecho Civil</u>, Granada, 1986, Cap. III, pág. 59.

sido definido como una `*auténtica exigencia de la efectividad de la deuda'*...".

De todo lo anterior se deriva que si la notificación que el acreedor del derecho haga al deudor <u>se limita</u> meramente a ofrecer información, el término prescriptivo no queda interrumpido ya que "...la mera información no constituye la manifestación inequívoca de quien amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo". <u>Zambrana</u> v. <u>E.L.A</u>., <u>supra</u>; <u>Cintrón</u> v. <u>E.L.A</u>., <u>supra</u>. En ese sentido, nos ilustra Puig Brutau a los efectos de que es necesario que "el acto interruptivo extrajudicial sea realizado por el acreedor en forma clara e inequívoca, que no deje dudas acerca de su intención".[3]

Por último, hemos establecido que recae sobre el titular del derecho, que alega que interrumpió la prescripción, la <u>carga de la prueba</u> de que existió una reclamación extrajudicial que cumplió con todos los requisitos exigidos. <u>Acosta Quiñones</u> v. <u>Milton Matos Rodríguez</u>, <u>supra</u>.

Analizamos, por último, el tercer mecanismo de interrupción de la prescripción: el reconocimiento de deuda por el deudor. Hemos interpretado que el reconocimiento de deuda tiene que ser realizado por el deudor, de forma espontánea y con la específica intención de reconocer la existencia de un derecho en su contra. <u>Agosto Ortiz</u> v. <u>Municipio de Río Grande</u>, Opinión y Sentencia de 20 de mayo de 1997. Como podemos observar, serán necesarios los <u>mismos requisitos</u> que en las reclamaciones extrajudiciales. Es decir, se requiere también (a) la oportunidad del reconocimiento, (b) que lo haga la persona legitimada para ello, es decir, el propio deudor, (c) que se reconozca exactamente el derecho afectado por la prescripción y (d) que el medio utilizado para tal reconocimiento de deuda sea uno idóneo, mediante el cual se

---

[3] Puig Brutau, *Caducidad y Prescripción Extintiva y Usucapión,* Ed. Bosch, Barcelona 1988, pág. 91.

exprese claramente la intención de admitir la vigencia de la deuda.

En ese sentido, hemos reiterado en innumerables ocasiones que no puede considerarse como un reconocimiento de deuda aquellas conversaciones y gestiones mantenidas entre las partes en el seno de una posible transacción. Así, en Acosta Quiñones v. Milton Matos Rodríguez, supra, en la página 11759, nos expresamos como sigue:

> "La regla sobre el alcance de conversaciones y ofertas de transacción es que '...*el hecho de que un litigante haga ofertas de transacción o de arreglo antes del pleito o durante su tramitación, nunca puede estimarse por sí solo como un reconocimiento, y a lo sumo lo que significa es que desea evitar el pleito o su continuación, por lo que tal clase de prueba nunca debe ser permitida por los tribunales'. Díaz de Diana v. A.J.A.S. Ins. Co., supra.*"

Una vez analizado el marco legal y jurisprudencial que rige la doctrina de la prescripción extintiva y sus modos de interrupción, pasamos a aplicarlo a los hechos del caso.


II

Conforme los hechos del presente caso, el 15 de mayo de 1995 se produjo el accidente del que surgió la posible responsabilidad de Wal-Mart. Desde ese momento, comenzó a "correr" el término prescriptivo de un (1) año que establece el Código Civil, ya que desde dicha fecha la lesionada sabía o debió saber que había surgido a su favor una causa de acción, puesto que conocía el daño y su elemento causante. Así pues, de no existir ninguna interrupción de dicho término, la causa de acción de la Sra. González en contra de Wal-Mart por las lesiones sufridas habrían prescrito el 15 de mayo de 1996, es decir, justo un año después de la producción del accidente.

Se alega, por la peticionaria, que la carta que enviara su representante legal de fecha 3 de julio de 1995 y  dirigida la

misma a la aseguradora[4], constituye una reclamación extrajudicial que interrumpió el término prescriptivo. Debemos señalar en este punto que dicha misiva <u>no</u> cumple con uno de los requisitos exigidos por nuestra jurisprudencia, cual es el de la "identidad", tal como ha sido interpretada por este Tribunal. Es decir, dicha comunicación fue oportuna, legítima e idónea; sin embargo, <u>su contenido se limitaba a informar del accidente sin manifestar de forma inequívoca la intención de exigir responsabilidad civil del demandado</u>.

Aun cuando considered --a los fines de la argumentación-- que dicha misiva efectivamente constituyó una reclamación extrajudicial, el término de un (1) año hubiera empezado a contar de nuevo en tal día, por lo que la acción hubiese prescrito el 3 de julio de 1996. Teniendo en cuenta que la demandante <u>no</u> volvió a interrumpir el término prescriptivo, ya que la segunda carta enviada a la aseguradora estaba fechada el 22 de septiembre de 1996, es decir, con posterioridad a la finalización de este nuevo término, <u>la causa de acción se hallaba, de todas formas, prescrita al momento de la radicación de la demanda</u>. Ésta se instó el 21 de

---

[4] Dicha misiva, en lo pertinente, lee así:

> "El 15 de mayo de 1995, mientras realizaba compras en la Tienda Wal Mart de Guayama, PR, mi cliente resbaló en el piso mojado de la tienda cayendo al suelo y recibiendo lesiones en el cuerpo. Al momento de ocurrir el accidente no había letrero alguno que indicara que el piso estaba mojado. La Sra. González, fue auxiliada por otros clientes que se encontraban en la tienda y se le dio conocimiento del accidente al personal gerencial de la tienda.
>
> Nuestra cliente se encuentra recibiendo tratamiento médico en la actualidad como resultado del accidente.
>
> He tratado de comunicarme con usted por teléfono en tres ocasiones, pero siempre sale el disco de que usted se encuentra ocupado, dejando mensages [sic].
>
> Si necesita información adicional sobre la condición física de mi cliente dejemelo saber, ya que hemos asumido la representación legal de ella en este caso.
>
> Esperando su pronta atención, quedo de usted..."

octubre de 1996, casi cuatro meses más tarde de la fecha de prescripción --3 de julio de 1996--, por lo que actuó correctamente el Tribunal de Primera Instancia al desestimar la acción por hallarse prescrita.

Se alega, por la peticionaria, como segundo fundamento, que las cartas que le fueron remitidas a ella por Claims Management el 23 de enero y el 24 de abril de 1996 constituyeron actos de interrupción de la prescripción[5]. <u>Dicha alegación es una igualmente errónea</u>. Como hemos resuelto en innumerables ocasiones, la reclamación extrajudicial debe ser hecha por el titular de la acción o su representante y debe ser remitida al deudor de la misma y recibida por éste. <u>¿Constituyeron tales cartas un reconocimiento de deuda por parte de la aseguradora</u>?

---

[5] Dichas cartas, en lo pertinente, leen de la siguiente manera:

"Claims Management, Inc., is the claims handler for Wal-Mart Stores, Inc., and their insurance carrier concerning customer incidents. We have been advised you represent the above captioned customer and request that all correspondence and inquiries be directed to the attention of this office.
Please provide a detailed description of your client's version of the incident with a list of all witnesses. Also, send copies of all medical examination involving the alleged injury and copies of itemized medical bills which you wish to submit as part of your client's claim. This information will be considered in the determination of liability and evaluation of the claim.

If you have any questions regarding this matter, please feel free to call (501) 621-2900, extension 659.

Thank you for your anticipated cooperation and assistance..."

--------o--------

"Claims Management, Inc., is the claims hadler for Wal-Mart Stores, Inc., and for their insurance carrier, regarding customer incidents.

Upon reviewing the file, it shows our last contact was on March 20, 1996. In order to update the file, we are requesting the status of the above claim.

Please contact me at your earliest convenience so we can further discuss and try to resolve this matter. I can be reached at (501) 621-2900, extension 659..."

Tal como hemos señalado en la exposición de derecho, este Tribunal ha resuelto que aquellas manifestaciones, gestiones, o incluso ofertas que el deudor haga al acreedor en el seno de la negociación de una posible transacción, <u>no</u> pueden considerarse como un reconocimiento de deuda. <u>Dicho reconocimiento de deuda debe contener una intención específica y clara de admitir la vigencia del derecho en su contra</u>. Una lectura de las cartas enviadas por Claims Manegement a la Sra. González Rodríguez <u>hace patente</u> que la <u>única</u> intención de la aseguradora era recabar información que le permitiera investigar la realidad de los hechos; <u>ello no constituye un reconocimiento de deuda</u>.

Se señala, por último por la peticionaria, que en la segunda misiva recibida por ella, Claims Manegement reconoció que el último contacto que tuvieron fue el 20 de marzo de 1996. Como hemos expuesto anteriormente, corresponde al titular del derecho probar que se ha producido un acto interruptivo de la prescripción. El mero hecho de que Claims Manegement señalara el 20 de marzo como el último contacto, <u>no</u> constituye prueba de que en dicho contacto se produjo una reclamación extrajudicial o un reconocimiento de deuda.

Por todo lo anterior, debemos concluir que, aún en el caso de entender que la carta del 3 de julio de 1995 interrumpió la prescripción, la demanda fue radicada casi tres (3) meses más tarde de la fecha máxima para ejercitar la acción, por lo que se hallaba prescrita.

Aunque estamos conscientes de las lesiones sufridas por la Sra. González Rodríguez, <u>no</u> podemos eludir la importancia que en nuestro ordenamiento jurídico tiene la figura de la prescripción extintiva. <u>Los demandantes y sus representantes legales tienen el deber de ser diligentes en el ejercicio de los derechos</u>. Cuando se incumple dicho deber, los tribunales deben ser <u>rigurosos</u> en la aplicación de la doctrina de la prescripción extintiva.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton concurre en el resultado sin opinión escrita. Los Jueces Asociados señores Negrón García y Fuster Berlingeri emitieron opiniones disidentes. La Juez Asociada señora Naveira de Rodón disiente sin opinión escrita.


                                        Isabel Llompart Zeno
                                         Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luz M. González Rodríguez

    Demandante-recurrente

                                CC-98-263        Certiorari

       v.

Wal-Mart, Inc., et al.

    Demandados-recurridos

Opinión Disidente del Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 9 de diciembre de 1998

I

La carta enviada por la representación legal de la Sra. Luz M. González Rodríguez el 3 de julio de 1995 a la compañía Claims Management, Inc. **constituyó una verdadera reclamación extrajudicial que interrumpió el término prescriptivo.**

En términos **inequívocos** expuso los elementos básicos que configuran toda causa de acción en daños y perjuicios, a saber, **acción u omisión, daños y su causalidad**. Al respecto, consignó que el 15 de mayo de 1995 la Sra. González Rodríguez se resbaló en el piso mojado de la tienda Wal-Mart cayendo al suelo, recibiendo lesiones en el cuerpo. Que al

momento de ocurrir el accidente no había letrero que indicara que el piso estaba mojado. Que fue auxiliada por los clientes que

se encontraban en la tienda. Que se le dio conocimiento del accidente al personal gerencial de la tienda y que la Sra. González

Rodríguez se encuentra recibiendo tratamiento médico como resultado del accidente.6

 De su faz, esta reclamación reúne todos los requisitos de un acto interruptor de la prescripción. Fue oportuna, el 3 de julio de 1995, a los dos y medio meses de ocurrido el accidente. Realizada por el titular de la acción, su abogado. El medio utilizado fue idóneo: comunicación escrita. Identificó la auténtica exigencia de la efectividad de la deuda. Fue dirigida a Claims Management, compañía ajustadora que procesa las reclamaciones de los clientes de las tiendas Wal-Mart. Expuso las acciones y omisiones que crearon una situación peligrosa para los clientes del establecimiento, la caída de la reclamante, sus daños y situación física en ese momento: sometida a tratamiento médico. **Esta información le fue brindada a la compañía ajustadora a modo de reclamo**. ¿Qué otra voluntad, sino la de hacer un reclamo se deriva de sus términos: a través de su representación legal, informa a la compañía los daños que padece debido a la negligencia de Wal-Mart (compañía a la que ellos representan). No cuantificó daños específicos por una razón: para el 22 de septiembre de 1996, continuaba recibiendo tratamiento médico por las lesiones sufridas y no existía aun siquiera un informe médico preliminar.

 **Estamos, pues, ante una reclamación: la auténtica exigencia de un derecho, en este caso, la indemnización por los**

**daños sufridos. No debemos requerir formas donde la ley no lo exige: lo importante es aceptar como reclamación**

**extrajudicial "siempre que la conciencia social estime que se trata de una conducta en la que, con más o menos suavidad,**

**o de forma más o menos tajante o apremiante, se muestre la decisión de obtener el pago."** M. Albaladejo, <u>Comentario al</u>

<u>Artículo 1973 del Código Civil</u>, Revista de Derecho Privado, págs. 989 y ss. (1977).

 La propia razón doctrinal de la institución de la prescripción nos obliga a concluir que la reclamación y gestiones de la

representación legal de la Sra. González Rodríguez y la Claims Management, Inc.,  interrumpieron y su acción ante el tribunal de

instancia no está prescrita. Nos explicamos.

II

 La prescripción es una institución de derecho sustantivo consagrada en el Código Civil, fundada en la seguridad jurídica, –<u>Cintrón</u> v. <u>E.L.A.</u>, 127 D.P.R. 582, 588 (1990); <u>Galib Frangie</u> v. <u>El Vocero</u>, res. en 6 de junio de 1995– **que se configura cuando los sujetos de una relación jurídica permanecen inactivos, esto es, en silencio en  la relación jurídica**. <u>De Jesús</u> v. <u>Chardón</u>, 116 D.P.R. 238, 245 (1985). Las presunciones atribuibles a ese **silencio** (abandono, renuncia, etc.) realmente no son el fundamento de la prescripción; éste se encuentra en la exigencia impuesta por la seguridad jurídica de que las relaciones jurídicas se extingan cuando permanecen durante un plazo de tiempo inactivas. G. Orozco Pardo, <u>La Interrupción de la Prescripción Extintiva en el Derecho Civil</u>, Universidad de Granada, 1986, pág. 22.

---

 6 De hecho, las alegaciones en su demanda –cuya suficiencia en términos de exponer una causa de acción, es incuestionable– prácticamente son las mismas de la carta. La única diferencia es la estimación de daños.

Los requisitos necesarios para que normalmente pueda invocarse con éxito la prescripción son: 1) existencia de un derecho que pueda verse afectado por la prescripción y que se encuentre en situación de poder ser ejercitado; 2) ausencia de una voluntad manifiesta contraria a la prescripción, **es decir que en la relación jurídica no se produzca una ruptura del silencio;** que la inactividad sea continua; 3) y, por último, el transcurso del plazo señalado por ley para cada caso concreto. G. Orozco Pardo, op. cit., págs. 39-42.

Ahora bien, merece destacarse que aunque la inactividad y el tiempo son los requisitos de la prescripción, **es la voluntad humana a la cual el ordenamiento jurídico le asigna efectos.** Así, a modo de polos opuestos, si la prescripción nace de una conducta inactiva, la interrupción se origina a partir de un comportamiento activo por parte de alguno de los sujetos, que manifiesta su voluntad de actuar. **La interrupción se basa en un hecho que supone la contradicción de la esencia misma de la prescripción: la actividad del derecho, el dialogo en la relación jurídica.** Zambrana Maldonado v. E.L.A., . **Al decir de Díez Picazo, "[s]i algún acontecimiento llega a romper de alguna manera este silencio, es claro que la prescripción no debe producirse. Si algo anuncia que el derecho sigue vivo, que va a ser ejercitado o simplemente que puede serlo, la pretensión del titular del derecho no será nunca intempestiva ni, por ello, inadmisible."** L. Díez-Picazo, La Prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964, pág. 94.

Por su parte, Orozco Pardo define la interrupción como "toda actividad oportunamente realizada por un sujeto legitimado para ello, que manifiesta, **expresa o tácitamente,** la inequívoca voluntad de ejercitar, **conservar** o reconocer el derecho, impidiendo su prescripción e inutilizando el tiempo transcurrido para el cómputo del plazo de la misma" G. Orozco Pardo, op. cit., pág. 63. Esta definición recoge los requisitos jurisprudenciales para que el acto interrumpa el término prescriptivo, a saber, reclamación oportuna antes de la consumación del

plazo; por el titular del derecho o representante autorizado; a través de un medio idóneo; e identidad entre el derecho reclamado y aquel afectado por la prescripción. Díaz de Diana v. A.J.A.S., 110 D.P.R. 471, 477 (1980); De Jesús v. Chardón, supra; Cintrón v. E.L.A., supra; Zambrana Maldonado v. E.L.A., supra; Galib Frangie v. El Vocero, supra.

Como la prescripción de un derecho **es  lo excepcional** –siendo su ejercicio o conservación lo normal–, el Artículo 1873 de nuestro Código Civil recoge tres medios de interrupción: ejercicio ante los tribunales, reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de deuda por el deudor. 31 L.P.R.A. sec. 5303.

Confrontados con el significado de **reclamación extrajudicial**, en Díaz de Diana Diana v. A.J.A.S.., Ins. Co., supra, citando a Díez-Picazo expresamos:

> "Reclamación vale, en principio, tanto como exigencia o intimación. Es decir: se trata de un acto por el cual el titular de un derecho subjetivo o de una facultad se dirige al sujeto pasivo de dicho derecho o de dicha facultad **requiriéndole para que adopte el comportamiento debido. La reclamación es pues una pretensión en sentido técnico.** (Pág. 476) (Énfasis Suplido).

**Vemos pues, que en su esencia la reclamación  es el acto que rompe con el silencio en virtud del cual la prescripción actúa, manifestando, la reclamación, la vitalidad del derecho. Donde había silencio, inercia, hay ahora dialogo, actividad con lo que la prescripción queda sin razón de operar, quedando su consumación impedida.** G. Orozco Pardo, op. cit., pág. 57. En el caso de autos, la Sra. González Rodríguez, rompió el silencio en virtud del cual la prescripción pudo haber actuado.

### III

La reclamación de la representación legal de la Sra. González Rodríguez, puso de manifiesto su voluntad de mantener vivo su derecho. Cualesquiera dudas quedan despejadas por la propia compañía Claims Management, Inc., **que siempre entendió que tenía ante sí una reclamación.** Desde su contestación inicial fechada el 23 de enero de 1996,[7] solicitó al abogado

---

7 "Claims Management, Inc., es el **manejador de reclamaciones** de las tiendas Wal-Mart, Inc., y su compañía aseguradora para todo incidente relacionado con sus clientes. Se nos ha informado que usted representa al cliente de epígrafe y solicitamos que toda la correspondencia y todas las preguntas sean dirigidas a esta oficina.

Por favor, someta una descripción detallada de la versión de su cliente sobre el incidente, con una lista de todos los testigos. Además, envíe copias de todos los expedientes médicos relacionados con cualquier tratamiento y/o examen relacionados con la alegada lesión, y copias detalladas de las facturas médicas que desee someter **como parte de la reclamación de su cliente. Esta información se tomará en cuenta para determinar la responsabilidad y para evaluar la reclamación.**

Si tiene alguna pregunta con respecto a este asunto, llame al (501) 621-2900, extensión 659.

Gracias anticipadas por su ayuda y cooperación..."7 (Énfasis suplido, traducción nuestra).

de la Sra. González Rodríguez que le enviara determinada información "relacionada con la alegada lesión y copias de las facturas médicas detalladas desee someter **como parte de la reclamación de su cliente**". (Traducción nuestra).

Esa reclamación extrajudicial dio lugar a que la compañía ajustadora procediera a evaluarla y le pidiera el 26 de enero de 1996, la entrega de varios documentos, entre ellos la descripción del incidente según relatado por la víctima, lista de testigos, copias de récords médicos relacionados al accidente, así también como copias de las facturas médicas**.**

Tres (3) meses después, el 24 de abril, Claims Management, Inc., se comunica por escrito nuevamente con la representación legal de la Sra. González.8 **La carta hace referencia a una comunicación que hubo entre ellos** el 20 de marzo de 1996 y le solicita el status de la reclamación.

Evidentemente esta reclamación extrajudicial estuvo vigente (viva) ante la compañía de seguros mientras era evaluada. Las gestiones realizadas por la representación legal de la Sra. González Rodríguez y la compañía Claims Management, Inc., fueron comunicaciones inteligentes que, en estos casos, no pueden evaluarse de forma aislada. No compartimos la tesis que analiza la presente situación bajo el predicado de que la carta enviada no fue una reclamación extrajudicial; tampoco la tesis de que la contestación de Claims Management, Inc., constituyó un reconocimiento de deuda. A**mbos análisis dividen las comunicaciones habidas entre el abogado de la Sra. González y la aseguradora, privando de este modo la unidad y continuidad en tiempo que por propia naturaleza contienen**.9

IV

En resumen, unidad en tiempo y continuidad de las comunicaciones entre la representación legal de la peticionaria y la Claims Management, Inc., afirmó la vigencia de la reclamación. Su participación en este proceso extrajudicial necesariamente

---

8 "Claims Management, Inc., es el manejador de reclamaciones de las tiendas Wal-Mart, Inc., y su compañía aseguradora para todo incidente relacionado con sus clientes.

Al revisar el expediente, **nos percatamos de que nuestra última comunicación fue el 20 de marzo de 1996.** Para poner al día el expediente, necesitamos conocer el estado de la **reclamación** que antecede.

Comuníquese conmigo a la mayor brevedad posible para que podamos discutir a fondo este asunto y tratar de resolver el mismo. Me puede conseguir en el (501) 621-2900, extensión 659..."8 (Énfasis suplido; traducción nuestra).

9 En _Díaz de Diana_ v. _A.J.A.S. Ins. Co_., 110 D.P.R. 471, 483 (1980) **evaluamos las conversaciones como una unidad de acto al determinar si la reclamación extrajudicial había interrumpido.**

Resolvimos que estas no tuvieron el efecto de interrumpir el término prescriptivo ya que las mismas se "mantuvieron interrumpidas diez y nueve meses", periodo en exceso del término prescriptivo de la acción en daños y perjuicio ejercitada.

implicó una clara voluntad de hacer valer su derecho a una indemnización. Estas gestiones distan mucho y no pueden en modo alguno estimarse como un abandono o inercia en el ejercicio de sus derechos: son prueba clara de su intención de ejercitarlos y tuvieron fuerza interruptora.

La peticionaria, Sra. González Rodríguez, inició un proceso de reclamación extrajudicial y así lo entendió la compañía aseguradora. Claims Management, Inc., debe su existencia a procesar reclamaciones. No se dedica a la venta de pasajes o de bienes muebles. No puede por varios meses mantener comunicaciones con un reclamante, pedirle información de versiones, testigos, récords y gastos (equivalente a un descubrimiento de prueba fuera de un tribunal), para luego decir que no tenía ante sí una reclamación extrajudicial viva. **El principio de buena fe, omnipresente en toda actividad humana, aplica a las aseguradoras.**

ANTONIO S. NEGRÓN GARCÍA
*Juez Asociado*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


LUZ M. GONZALEZ RODRIGUEZ

    Demandante-Apelante-
    Recurrente

  vs.                                    CC-98-263

WAL-MART INC., ET AL

    Demandado-Apelado-
    Recurrido



Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 9 de diciembre de 1998.


Una vez más[10], en relación al asunto que aquí nos concierne, la mayoría de este Tribunal se aferra rígidamente a los meros conceptos y al formalismo estéril, y en consecuencia decreta un resultado injusto. Una vez más, se supeditan las funciones y los fines propios del Derecho, al leguleyismo obturado. Una vez más, se distorsiona la razón de ser y el sentido propio de la figura de la prescripción extintiva, y se favorece con ello a la parte más poderosa en una contienda desigual, precisamente la que más eludió sus deberes jurídicos.

---

[10] Véase la opinión disidente en <u>Acosta Quiñones v. Matos Rodríguez,</u> opinión del 5 de abril de 1994, 135 D.P.R. ___, 94 JTS 47.

Una vez más, la mayoría de este Tribunal confunde su rol y su misión.  Veamos.

I

El 15 de mayo de 1995, como a las 7:15 de la noche, la peticionaria Luz M. González Rodríguez, junto con su hija y su nieta, visitó una sucursal de Wal-Mart en Plaza Guayama Shopping Center para realizar algunas compras.  González Rodríguez resbaló mientras salía de uno de los departamentos de dicha sucursal, alegadamente porque el piso de la tienda estaba mojado.  Por dicha caída, González Rodríguez sufrió golpes en su pierna y hombro derechos.  Fue auxiliada por su hija y por otros clientes.

González Rodríguez notificó lo sucedido a Nick Febles, del Departamento de Servicios al Cliente de la tienda. Este anotó la información sobre el accidente, con el propósito de presentar una reclamación ante la Claims Management, Inc., que es la compañía responsable de atender las reclamaciones por accidentes presentadas por clientes de Wal-Mart.  Además, Febles instruyó a González Rodríguez que debía acudir a un médico para que la examinara; y que debía comunicarse con él al día siguiente para verificar si la reclamación aludida ya había sido sometida.

Ese mismo día, González Rodríguez acudió a la Sala de Emergencia de la Clínica Santa Rosa.  Se le tomaron radiografías del hombro y la pierna derecha y la espalda.  También se le administró una inyección para aliviarle el dolor.  Luego de esto, alegadamente, González Rodríguez intentó comunicarse con Claims Management sin éxito.

El 3 de julio de 1995, la representación legal de González Rodríguez envió la siguiente carta a Claims Management:

> El 15 de mayo de 1995, mientras realizaba compras en la Tienda Wal Mart de Guayama, PR, mi cliente resbaló en el piso mojado de la tienda cayendo al suelo y recibiendo lesiones en el cuerpo.  Al momento de ocurrir el accidente no había letrero alguno que indicara que el piso estaba mojado.  La Sra. González, fue auxiliada por otros clientes que se encontraban en la tienda y se le dio conocimiento del accidente al personal gerencial de la tienda.
>
> Nuestra cliente se encuentra recibiendo tratamiento médico en la actualidad como resultado del accidente.
>
> He tratado de comunicarme con usted por teléfono en tres ocasiones, pero siempre sale el disco de que usted se encuentra ocupado, dejando mensajes.
>
> Si necesita información adicional sobre la condición física de mi cliente déjemelo saber, ya que hemos asumido la representación legal de ella en este caso.
>
> Esperando su pronta atención, quedo de usted...

El 23 de enero de 1996, la oficial de reclamaciones de Claims Management contestó la carta anterior al representante legal de González Rodríguez, en los siguientes términos:

> Claims Management, Inc., is the claims handler for Wal-Mart Stores, Inc., and their insurance carrier concerning customer incidents.  We have been advised you represent the above captioned customer and request that all correspondence and inquiries be directed to the attention of this office.
>
> Please provide a detailed description of your client's version of the incident with a list of all witnesses.  Also, send copies of all medical records relating to any treatment and/or examination involving the alleged injury and copies of itemized medical bills which you wish to submit as part of **your client's claim**.  This information will be considered in the determination of liability and **evaluation of the claim**.
>
> If you have any questions regarding this matter, please feel free to call (501) 621-2900, extension 659.
>
> Thank you for your anticipated cooperation and assistance...  (Enfasis añadido).

Meses después, el 24 de abril de 1996, la misma oficial de Claims Management le envió la siguiente comunicación al representante legal de González Rodríguez:

> Claims Management, Inc., is the claims handler for Wal-Mart Stores, Inc., and for their insurance carrier, regarding customer incidents.
>
> Upon reviewing the file, it shows our last contact was on March 20, 1996. In order to update the file, **we are requesting the status of the above claim**.
>
> Please contact me at your earliest convenience so we can further discuss and try to resolve this matter. I can be reached at (501) 621-2900, extension 659... (Enfasis añadido).

El 22 de septiembre de 1996, el representante legal de González Rodríguez envió otra misiva a Claims Management, mediante la cual le notificó que su cliente continuaba recibiendo tratamiento médico por las lesiones sufridas por la caída, y que le había solicitado a sus médicos un informe preliminar sobre su condición, para remitírselo a Claims Management tan pronto fuera posible. Le acompañó, además, un relato detallado del accidente, preparado por la hija de González Rodríguez, quien acompañaba a ésta cuando ocurrió la caída.

Claims Management no contestó esta última misiva de la peticionaria. En vista de ello, González Rodríguez presentó demanda de daños y perjuicios contra Wal-Mart, Inc., el 21 de octubre de 1996, por las lesiones sufridas en el accidente en cuestión.

El 16 de abril de 1997, la parte demandada presentó una moción de desestimación, alegando que la causa de acción había prescrito. Reconoció la parte demandada que sus ajustadores se habían comunicado con el representante legal de la demandante, pero adujo que dichas misivas no habían tenido el efecto de interrumpir la prescripción.

El 5 de diciembre de 1997, el Tribunal de Primera Instancia, Sala Superior de Guayama, determinó que la acción de la peticionaria estaba prescrita, por lo que la desestimó.

El 27 de febrero de 1998, el Tribunal de Circuito de Apelaciones confirmó el dictamen de instancia. Inconforme, la peticionaria acudió ante nos oportunamente, mediante solicitud de certiorari. La parte recurrida, además, presentó su oposición a que expidiésemos el recurso solicitado.

II

Como puede observarse, la cuestión ante nos se reduce a determinar si en el caso de autos se interrumpió el período prescriptivo, mediante reclamación extrajudicial, según aduce la parte peticionaria.

Debemos comenzar nuestro análisis tomando como punto de referencia la acertada cita que hicimos del eminente comentarista Diez Picazo, en <u>Zambrana Maldonado v. E.L.A.</u>, op. del 30 de enero de 1992, 129 D.P.R. ___, 92 JTS 12.

"...La Ley no exige, en este punto, ninguna forma especial y donde la ley no distingue tampoco debemos nosotros distinguir. **En cualquier forma en que sea hecha la reclamación posee valor interruptivo**... En todo caso, se podrá plantear un problema de prueba —de la existencia de la reclamación y de su fecha-- pero no un problema de forma." (Enfasis añadido).

Conforme a la doctrina civilista, en Puerto Rico ya hemos resuelto claramente que la prescripción extintiva es una institución que "se basa en el imperativo de castigar la **inercia** en el ejercicio de los derechos", y así "evitar litigios difíciles de adjudicación por la antigüedad de las reclamaciones". Zambrana Maldonado v. E.L.A., supra; De Jesús v. Chardón, 116 D.P.R. 238 (1985). Su propósito claro es darle efectividad al tráfico jurídico, evitando que el deudor o sujeto pasivo de una relación jurídica sea indebidamente afectado por las **demoras o abandono del titular activo**. Ibid. La clara presencia de los aludidos elementos de inercia o abandono son esenciales para que sea justificable moral y jurídicamente una determinación de que en un pleito medió prescripción. Ello debido a que tal determinación, al conculcar la acción para reclamar un derecho, tiene el grave y oneroso efecto de negar la vindicación del mismo. Es por ello que Diez Picazo entiende que una reclamación extrajudicial posee valor interruptivo no importa la forma en que sea hecha, y que Albaladejo juzga similarmente que deben considerarse muchas formas posibles de hacer la reclamación extrajudicial, ..."siempre que la conciencia social estime que se trata de una conducta en la que, con más o menos suavidad, o de forma más o menos tajante o apremiante, se muestre la decisión de obtener el pago." Albaladejo, Comentario al Artículo 1973 del Código Civil, Revista de Derecho Privado, a las págs. 989 y ss. (1977). El fundamental valor jurídico de permitirle a las partes vindicar sus derechos judicialmente requiere esta ilustrada concepción de la reclamación extrajudicial.

Es menester enfatizar la naturaleza **excepcional** de la prescripción extintiva. Se trata de una figura que pone fin a un derecho: el titular de ese derecho lo pierde; se extingue. Evidentemente, no es de carácter creativo; no persigue fines de apertura a la validación o defensa afirmativa de importantes intereses humanos o sociales. No se ajusta a principios de estricta justicia, sino que, como mal menor, existe para evitar la inestabilidad indefinida en las relaciones jurídicas que ocurre cuando el titular de un derecho lo abandona por mucho tiempo. **Por ello, sólo se justifica cuando es patente la inactividad del titular del derecho**; es decir, cuando la inacción de dicho titular es tal que equivale a una **renuncia** de su derecho. Así se concibe propiamente la prescripción extintiva en la teoría del Derecho: como una forma de renuncia. Véase, Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562, 589, (1966), citando a A. Colin y H. Capitant, a tales efectos. En vista de lo anterior, es realmente peregrina la noción de la mayoría, expresada en la sentencia de autos, de que los tribunales deben privar rigurosamente de su derecho al titular que no ha formulado su reclamación siguiendo los inflexibles formalismos doctrinales. Más bien, en recta juridicidad y en justicia, en lo que los tribunales deben ser rigurosos es en verificar si el titular en cuestión en efecto abandonó su derecho, por lo que merece que se le prive del mismo. El foro judicial no debe estar tan solícito y dispuesto a extinguir derechos de las personas como debe estar para reconocerlos y protegerlos, sobre todo en situaciones en las cuales la persona común se enfrenta desigualmente a una poderosa entidad.

En el caso de autos, la parte peticionaria de ningún modo abandonó su causa de acción, ni incurrió en dilaciones que dificultasen la adjudicación de su reclamación. Por el contrario, González Rodríguez notificó de inmediato lo de su accidente al oficial de Wal-Mart; y poco después, su abogado le hizo la reclamación correspondiente precisamente a la compañía responsable de atender las reclamaciones por accidentes

sufridos por los clientes de la tienda. **La propia compañía Claims Management entendía que tenía ante sí una reclamación extrajudicial**, ya que el 23 de enero de 1996 le pidió al abogado de la peticionaria que le enviara determinada información

> "involving the **alleged injury** and copies of itemized medical bills which you wish to submit as part of your **client's claim**". (Enfasis suplido),

y el 24 de abril de 1996 le volvió a escribir a dicho abogado requiriéndole que le informara sobre

> "the status of the above **claim**". (Enfasis suplido).

Es evidente, pues, que estaba en trámites una reclamación ("claim") por los daños sufridos por la peticionaria. Esta no había precisado aún una reclamación más específica porque para el 22 de septiembre de 1996, todavía continuaba recibiendo tratamiento médico por las lesiones sufridas por la caída y no existía aun siquiera un informe médico preliminar sobre su condición.

Debe concluirse, por tanto, que para el 21 de octubre de 1996, cuando se presentó la demanda, ésta no estaba prescrita. La peticionaria había iniciado ya el proceso de reclamación, y **así lo entendía la propia compañía aseguradora**. Sólo unos meses antes, dicha compañía había solicitado información sobre el status de la reclamación, denominándola así expresamente ("claim"). No puede interpretarse razonablemente que aquí no era clara la intención de reclamar de la perjudicada. Las comunicaciones del abogado de González a la compañía a cargo de las reclamaciones por accidentes de Wal-Mart no tenían, **ni podían tener ningún otro propósito o intención** que no fuera el de reclamar una compensación por los daños sufridos por González. Más aun, la continuidad de las cartas del representante legal de la peticionaria a dicha compañía demuestra que no hubo inercia por la perjudicada, y evidencia la voluntad inequívoca de González de obtener indemnización. No hubo, pues, de modo alguno un abandono de la causa. Si algo, lo que debe resaltarse es la demora de la compañía aludida en atender expeditamente las comunicaciones de la peticionaria. No puede

concluirse de modo razonable alguno que la reclamación de González no estaba viva cuando se presentó la acción judicial. No están presentes, pues, en este caso ninguno de los intereses públicos que dan razón de ser a la figura de la prescripción extintiva.

En conclusión, en el caso de autos la acción no estaba prescrita. Decidir lo contrario, como hace la mayoría, significa cerrar las puertas a que los perjudicados por accidentes como el de este caso hagan reclamaciones informales extrajudiciales a los responsables de los daños sufridos por ellos o a sus compañías de seguro, mientras el perjudicado en el accidente espera el tiempo indispensable para poder precisar sus daños. Significa negar efecto jurídico al proceso de negociación que las partes lleven a cabo para evitar las contiendas judiciales. Significa que en todo caso debe reclamarse judicialmente de inmediato, aunque no se conozca aún la magnitud de los daños sufridos, e independientemente de la disposición de transigir que puedan tener las partes en el pleito. Significa que en casos como el de autos, donde la compañía a cargo de atender la reclamación entretuvo al perjudicado pidiendo información, el que sufrió daños perdió su fundamental derecho a ser indemnizado, sólo porque en la reclamación extrajudicial no utilizó unas palabras sacramentales. Finalmente, significa que al titular de derechos más frágil en estas situaciones, se le requieren unas diligencias formalistas rigurosas pero inconsecuentes, mientras que al más fuerte, que tiene unos claros deberes jurídicos, se le permite escaparse impunemente a pesar de haber hecho uso de tácticas dilatorias. Se invierte así el propósito y razón de ser de la prescripción. Se abdica nuestra ingente función justiciera. Se revierte a concepciones del Derecho y la justicia que ya habían sido superadas. Como no puedo avalar lances y significados tan apocados y anacrónicos, y de tan poco sentido jurídico, que sólo dan lugar a que se perpetúan graves injusticias en casos como los de autos, disiento una vez más.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO