| | |
|---|---|
| Ana Y. Cacho González; Amneris Yvette González de Elías y Charles K. Elías, por sí y como miembros de la Sociedad Legal de Ganaciales compuesta por ambos<br><br>Apelados<br><br>v.<br><br>Antulio "Kobbo" Santarrosa, su esposa Iris Lugo Cabrera y la Sociedad Legal de Ganaciales compuesta por ambos; J&K Enterprises, Inc.; Televicentro of Puerto Rico LLC; Héctor Travieso López, por sí y en representación de la Sociedad Legal de Ganaciales compuesta con su esposa Fulana de Tal; Telemundo of Puerto Rico Studios LLC; Es Televisión, Corp.; Silvia Hernández Rodríguez; y personas XYZ<br><br>Apelantes | Certiorari<br><br>2019 TSPR 146<br><br>203 DPR ____ |

Número del Caso:  AC-2017-18
                  AC-2017-21
                  AC-2017-23

Fecha: 19 de agosto de 2019

Tribunal de Apelaciones:

    Región Judicial de Bayamón, Panel V

**AC-2017-18**

<u>Abogados de los apelantes</u>:

**Antulio "Kobbo" Santarrosa**

    Lcdo. Edgardo Canales Ydrach

**Televicentro of Puerto Rico LLC**

    Lcdo. Juan P. Marchand Quintero

**Telemundo de Puerto Rico, Inc.**

    Lcdo. Ricardo F. Casellas Sánchez
    Lcda. Natalia Morales Echevarría

**Héctor Travieso López**

    Lcdo. Alexis M. Acevedo Colón

Abogado de la parte apelada:

    Lcdo. José A. Rodríguez Jiménez


**AC-2017-21**

Abogados de los apelantes:

**Televicentro de Puerto Rico LLC**

    Lcdo. Juan R. Marchand Quintero

**Antulio "Kobbo" Santarrosa**

    Lcdo. Edgardo Canales Ydrach

**Telemundo de Puerto Rico, Inc.**

    Lcdo. Ricardo F. Casellas Sánchez
    Lcda. Natalia Morales Echevarría

**Héctor Travieso López**

    Lcdo. Alexis M. Acevedo Colón

Abogado de la parte apelada:

    Lcdo. José A. Rodríguez Jiménez


**AC-2017-23**

Abogados de los apelantes:

**Telemundo de Puerto Rico, Inc.**

    Lcdo. Ricardo F. Casellas Sánchez
    Lcda. Natalia Morales Echevarría

**Televicentro de Puerto Rico LLC**

    Lcdo. Juan R. Marchand Quintero

**Antulio "Kobbo" Santarrosa**

    Lcdo. Edgardo Canales Ydrach

Abogado de la parte apelada:

    Lcdo. José A. Rodríguez Jiménez


Materia: Daños y Perjuicios – Los casos de difamación se analizan bajo la doctrina de daños sucesivos y el término prescriptivo debe calcularse de manera individual para cada uno de los alegados actos difamatorios. Una carta cumple con los requisitos de una reclamación extrajudicial para interrumpir el término prescriptivo, aunque no incluya las fechas específicas de las publicaciones difamatorias.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Ana Y. Cacho González; Amneris Yvette González de Elías y Charles K. Elías, por sí y como miembros de la Sociedad Legal de Gananciales compuesta por ambos<br><br>Apelados<br><br>v.<br><br>Antulio "Kobbo" Santarrosa, su esposa Iris Lugo Cabrera y la Sociedad Legal de Gananciales compuesta por ambos; J&K Enterprises, Inc.; Televicentro of Puerto Rico LLC; Héctor Travieso López, por sí y en representación de la Sociedad Legal de Gananciales compuesta con su esposa Fulana de Tal; Telemundo of Puerto Rico Studios LLC; Es Televisión, Corp.; Silvia Hernández Rodríguez; y personas XYZ<br><br>Apelantes | AC-2017-0018<br>AC-2017-0021<br>AC-2017-0023 | |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 19 de agosto de 2019.

Nos toca determinar si una demanda de daños y perjuicios contra varios presentadores y productores de programas de televisión por, presuntamente, publicar programas con contenido difamatorio durante varios años, debe analizarse bajo la doctrina de daños sucesivos o bajo la de daños continuados. También debemos evaluar si unas cartas cumplieron con los requisitos de toda reclamación extrajudicial para interrumpir el término

prescriptivo, a pesar de no incluir las fechas específicas de las alegadas publicaciones difamatorias.

Reiteramos lo resuelto en Galib Frangie v. El Vocero de P.R., infra, por lo que resolvemos que la publicación de contenido difamatorio provoca daños sucesivos y que el término prescriptivo debe calcularse de manera individual para cada uno de los actos alegadamente difamatorios. En cuanto a las cartas, concluimos que las fechas específicas de cada programa alegadamente difamatorio no fueron necesarias para que el reclamo sea patente y cumpliera con los requisitos jurisprudenciales.

I

El 9 de marzo de 2010 murió el niño Lorenzo González Cacho. Su muerte estremeció a Puerto Rico y recibió amplísima cobertura mediática. Poco tardaron en salir a la luz pública una variedad de hipótesis para explicar el suceso. Algunas responsabilizaron a familiares cercanos del niño.

El 31 de julio de 2014, la madre del niño fenecido, la señora Cacho González, presentó una demanda de daños y perjuicios, violación de derechos constitucionales, hostigamiento, persecución y difamación contra el Sr. Antulio "Kobbo" Santarrosa, su esposa Iris Lugo Cabrera y la sociedad legal de gananciales compuesta por ambos (en conjunto, señor Santarrosa); J&K Enterprises, Inc.; Televicentro of Puerto Rico, LLC; Héctor Travieso López, por sí y en representación de la sociedad legal de

gananciales compuesta con su esposa Fulana de Tal; Telemundo of Puerto Rico Studios, LLC; E. S. Television, Corp; Silvia Hernández Rodríguez, y personas X, Y, Z. También se unieron como demandantes la Sra. Amneris Yvette González de Elías (madre de la señora Cacho González) y Charles K. Elías (esposo de la señora González de Elías), por sí y como miembros de la sociedad legal de gananciales compuesta por ambos.

Según se alegó en la demanda, "a partir de la madrugada en que falleció Lorenzo, comenzó un calvario para los aquí demandantes que ha perdurado en forma ininterrumpida hasta el día de hoy". Demanda, pág. 4. "[L]os demandados iniciaron contra la Sra. Cacho y su familia, una serie de rumores, insinuaciones, comentarios malintencionados y acusaciones falsas y difamatorias […]". Íd., pág. 5. Alegaron que estos "se han transmitido a través de los programas de los demandados una y otra vez a lo largo de estos cuatro años […]". Íd., pág. 7. Telemundo y Televicentro presentaron mociones de desestimación fundamentadas en que la demanda estaba prescrita, total o parcialmente. La señora Cacho González se opuso a la desestimación, y Televicentro y Telemundo replicaron.

El 23 de enero de 2015, el Tribunal de Primera Instancia emitió una *Sentencia Parcial* mediante la cual declaró ha lugar las mociones de desestimación. Razonó que el caso debía analizarse bajo la doctrina de daños

sucesivos, por lo que para cada programa de televisión difamatorio transcurría un término prescriptivo separado de un año. Como entendió que los demandantes tampoco interrumpieron extrajudicialmente ninguno de estos términos, el foro primario desestimó todas las causas de acción que hubieran surgido antes del año precedente a la presentación de la demanda y ordenó la continuación de los procesos respecto a las demás.

La señora Cacho González apeló. Planteó que el Tribunal de Primera Instancia erró: (1) al determinar que unas cartas de 13 de agosto de 2013 no interrumpieron extrajudicialmente el término prescriptivo porque no detallaron los programas en que se le había difamado; (2) al desestimar las causas de acción anteriores al 31 de julio de 2013 y no reconocer que mientras persiste la conducta culposa del demandado, la causa de acción se renueva constantemente, y (3) al declarar con lugar la moción de desestimación de los demandados, aunque no debe desestimarse una demanda a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo los hechos que pueda probar en su día.

El Tribunal de Apelaciones revocó la sentencia parcial apelada y determinó que los primeros dos errores se cometieron, pero consideró innecesario atender el tercer error. Resolvió que las cartas de 13 de agosto de 2013 enviadas al señor Santarrosa y a Televicentro (respectivamente, presentador y productora de

SuperXclusivo, uno de los programas que alegadamente publicó expresiones difamatorias) interrumpieron el término prescriptivo de las acciones que estaban vigentes. Esto era pertinente para efectos de esos codemandados, porque el programa SuperXclusivo dejó de producirse en enero de 2013. En cuanto a los demás codemandados, el foro apelativo intermedio razonó que, como las alegaciones en la demanda describieron una conducta ininterrumpida de estos que perduró hasta que se presentó la demanda, los reclamos no habían prescrito.

El señor Santarrosa, Televicentro y Telemundo nos presentaron recursos de apelación por separado. Los tres argumentaron que el Tribunal de Apelaciones erró al aplicar la doctrina de daños continuados y no la de daños sucesivos, producto de una interpretación errónea de Rivera Ruiz et al. v. Mun. de Ponce et al., infra (sobre daños continuados), y de Galib Frangie v. El Vocero de P.R., infra (sobre daños sucesivos), lo que alargó el término prescriptivo de la acción. Además, Televicentro y Telemundo plantearon que fue un error reconocerle efecto interruptor a las cartas de 13 de agosto de 2013. El señor Santarrosa y Televicentro igualmente señalaron como error que el Tribunal no desestimara la demanda, puesto que esta descansaba en lenguaje conclusorio y recitaciones genéricas de los elementos de una causa de acción. Finalmente, Televicentro también alegó que el Tribunal de Apelaciones erró al permitir que los

demandantes subvirtieran el peso probatorio que deben sustentar en la etapa de alegaciones y al negarse arbitrariamente a distinguir la decisión incompatible de su Panel hermano en González de Elías v. Sánchez Román, KLAN201600287 (8 de junio de 2016).

El 26 de mayo de 2017, acogimos los tres recursos de apelación y ordenamos su consolidación. Resolvemos únicamente aquello relacionado a la prescripción, porque fue lo que decidió el Tribunal de Primera Instancia y lo que revisó el Tribunal de Apelaciones. Por las razones que siguen, revocamos parcialmente la Sentencia del Tribunal de Apelaciones.

II

Distinguir los daños continuados de los daños sucesivos es necesario para lograr resultados justos que sean afines con la política pública y los principios jurídicos. Hacer la diferenciación, no obstante, puede ser complicado en la práctica. Recientemente resolvimos una confusión doctrinal creada en torno al término prescriptivo para acciones por daños continuados. En Rivera Ruiz et al. v. Mun. de Ponce et al., 196 DPR 410 (2016) (Rivera Ruiz), un grupo de residentes presentó una demanda contra el municipio porque la calle donde vivían se inundaba cuando llovía debido a falta de mantenimiento y problemas con el alcantarillado. Aprovechamos la ocasión para explicar en detalle lo que son los daños continuados y precisar que el término prescriptivo para

incoar una acción para solicitar resarcimiento por estos daños comienza a transcurrir cuando se verifican los últimos actos u omisiones o se produce el resultado definitivo, lo que sea posterior.

Nuestro razonamiento se basó en que los daños continuados configuran una sola causa de acción que incluye todas las consecuencias lesivas ocasionadas por los actos culposos o negligentes. Rivera Ruiz, pág. 417. Estos daños son ininterrumpidos y unidos entre sí, por lo que, al ser conocidos, se puede prever su continuidad. Íd. En cambio, los daños sucesivos constituyen una secuencia de daños individuales y concretos que se producen en intervalos finitos de tiempo. Cada lesión a causa de un acto u omisión culposa o negligente produce un daño distinto, que a su vez genera una causa de acción independiente. Son daños ciertos que se van repitiendo, sin que necesariamente sean idénticos, y que no son previsibles o susceptibles de ser descubiertos empleando diligencia razonable. Véanse Rivera Ruiz, págs. 416-417; Santiago v. Ríos Alonso, 156 DPR 181, 191 (2002).

Pero, como explicamos en Rivera Ruiz, pág. 417, "aunque tradicionalmente nos referimos a las doctrinas bajo estudio como daños continuos o daños sucesivos, lo que en realidad es continuo o sucesivo en estos escenarios es el acto u omisión que produce el daño y no, necesariamente, la lesión sufrida". La controversia presente es un buen ejemplo de que la distinción entre

conducta y efecto no es diáfana. El Tribunal de Apelaciones confundió la conducta con el efecto y, erróneamente, reputó los daños por difamación como daños continuados.

Sin embargo, nuestra jurisprudencia ya clasificó los casos de difamación como casos de daños sucesivos. El caso normativo en este tema es Galib Frangie v. El Vocero de P.R., 138 DPR 560 (1995) (Galib Frangie). Trata de una acción de daños y perjuicios por libelo por una serie de publicaciones en un periódico. El Tribunal de Primera Instancia desestimó por prescritas las causas de acción fundamentadas en seis de las siete publicaciones. Resolvió que cada publicación generó una causa de acción separada e independiente de las demás, con un término prescriptivo de un año cada una. Los demandantes acudieron ante este Tribunal y argumentaron que los daños eran continuados. Expresamente rechazamos ese planteamiento. Sin embargo, al explicar la doctrina de daños continuados, dijimos que lo determinante para efectos de la prescripción "es el momento cuando comienza la producción de los daños […]". Galib Frangie, pág. 575. Estas expresiones dieron inicio a la confusión doctrinal que corregimos en Rivera Ruiz.

En ese caso, revocamos las expresiones de Galib Frangie y su progenie, referentes al comienzo del término prescriptivo para acciones por daños continuados. Rivera Ruiz, pág. 429. No obstante, Galib Frangie quedó intacto

en cuanto a su adjudicación y razonamiento de que una serie de artículos de prensa, relacionados entre sí y sobre el mismo tema, dan paso a daños sucesivos a partir de cada publicación. Por lo tanto, los daños causados por difamación siguen siendo daños sucesivos, no continuados, tal y como lo resolvimos en 1995. No podía ser de otra manera. Una diferencia crucial entre estas categorías es la previsibilidad del daño, Rivera Ruiz, pág. 417, y la repetición del daño por difamación no es previsible. Creer que se hará otra publicación es especulativo, y creer que esa otra publicación, si se hiciera, sería difamatoria, es más especulativo aún.

La señora Cacho González intenta distinguir Galib Frangie del caso presente bajo el argumento de que en Galib Frangie fueron seis artículos en un espacio de dos meses, y no el esquema de persecución que alegadamente se mantuvo de forma ininterrumpida a través de programas frecuentes durante cuatro años. Es cierto que los daños alegados en este caso son más constantes que los alegados en Galib Frangie, pero eso no basta para reputarlos de continuados. Aun si la señora Cacho González sufrió daños de manera ininterrumpida durante varios años de programación difamatoria casi a diario, sus daños fueron sucesivos, pues las acciones de los programas y canales de televisión no fueron ininterrumpidas, aunque hayan sido frecuentes. Como ya dijimos, lo importante para

distinguir el daño continuo del sucesivo es la conducta (acción u omisión), no el efecto.

De hecho, varias jurisdicciones en Estados Unidos han rechazado expresamente aplicar la doctrina de daños continuados a casos de difamación. En los años noventa, una mujer que alegadamente mantuvo un romance con un funcionario electo demandó a la esposa de este y a dos de sus ayudantes de campaña por difamarla en libros que escribieron y en entrevistas que se difundieron por televisión. Flowers v. Carville, 310 F.3d 1118 (9no Cir. 2002). La demandante se amparó en la doctrina de daños continuados para intentar resucitar el reclamo relacionado a las expresiones en uno de los libros que se publicó cinco años antes de presentada la demanda. Sin embargo, la corte federal de distrito desestimó el caso por prescripción. El Tribunal Federal de Apelaciones para el Noveno Circuito sostuvo que la doctrina de daños continuados solo aplica cuando "no hay un incidente individual que se pueda en realidad identificar como la causa de un daño significativo". Íd., 1126 (9no Cir. 2002) (traducción nuestra) ("The [continuing tort] doctrine applies where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm'.") (citas omitidas). Por eso, antes de aplicar la doctrina de daños continuados, es adecuado evaluar si el efecto acumulativo de la conducta es el

generador de la causa de acción. Véase Page v. U.S., 729 F.2d 818, 821-822 (Cir. D.C. 1984).

Sin embargo, las acciones por difamación giran en torno a instancias individuales de publicación, y no a un efecto acumulativo. Por eso, "una causa de acción por difamación surge inmediatamente luego de que ocurre el acto torticero y, en consecuencia, no es apropiada para la excepción de violación continua". Íd. (traducción nuestra) ("[A] cause of action for defamation accrues immediately upon the occurrence of the tortious act and thus, is not appropriate for the continuing violation exception.") (citando a Lettis v. U.S. Postal Serv., 39 F.Supp.2d 181, 205 (E.D.N.Y. 1998)). Véanse, también, Amobi v. D.C. Dep't of Corr., 755 F.3d 980, 994 (D.C. Cir. 2014); McBride v. Peak Wellness Ctr., Inc., 688 F.3d 698, 710 (10mo Cir. 2012); Hukic v. Aurora Loan Services, 588 F.3d 420, 434-436 (7mo Cir. 2009).

Además, basta con reparar que la doctrina de daños continuados solo la hemos aplicado en casos que distan mucho de los de difamación. Véase Rivera Ruiz, pág. 423 ("en los casos donde se buscaba disuadir los estorbos y combatir la violencia doméstica, concluimos que el término prescriptivo comenzaba a transcurrir con el resultado definitivo o el último acto u omisión torticera, mientras que ante otros hechos resolvimos lo contrario"), y Velázquez Ortiz v. Mun. de Humacao, 197 DPR 656, 667 (2017) ("concluimos que el hostigamiento

sexual por ambiente hostil constituye una modalidad de daños continuados").

Los casos de estorbos, violencia doméstica y ambiente hostil en el empleo tienen particularidades que nos convencieron de la necesidad de darles un trato distinto. Por un lado, en casos de estorbos, o similares, hay actos u omisiones que se mantienen constantes, y el problema no se puede resolver sin la intervención activa de la parte culposa o negligente. En casos de violencia doméstica y ambiente hostil, también la parte negligente o culposa mantiene una condición de maltrato u hostilidad en el empleo que no cesa hasta que esa parte toma acciones positivas para remediarlas, o hasta que la parte afectada rompe con el ciclo de maltrato o escapa del ambiente hostil. Distinto es el caso de difamación pues, como cada acto difamatorio es individual y separado, en el momento en que la parte negligente o culposa publica el contenido difamatorio, su acción cesa.

La señora Cacho González, sin embargo, intenta eludir los argumentos que acabamos de exponer planteando que su pleito "no es un caso de difamación exclusivamente", que también se presentan "acciones de hostigamiento (*bullying*), persecución, violación de derechos constitucionales y enriquecimiento con la imagen de los demandantes", para las que la jurisprudencia de difamación no es aplicable. Alegato de los demandantes recurridos, pág. 19.

No obstante, eso no es pertinente para lo que hoy resolvemos. El Tribunal de Primera Instancia solo desestimó parcialmente la demanda "respecto a las causas de daños surgidas por los programas transmitidos en o antes del 31 de julio de 2013". Cacho González v. Santarrosa, D DP2014-0599 (23 de enero de 2015). El Tribunal de Apelaciones revocó esa determinación. Por lo tanto, las demás alegaciones sobre daños supuestamente sufridos por otros actos de los demandados y aquí apelantes (sobrevolar con un helicóptero la casa de la señora Cacho González y grabar la casa, irrumpir en la urbanización donde la señora Cacho González residía, seguir y acosar a la señora Cacho González en los lugares que frecuentaba, introducir micrófonos y grabar conversaciones privadas) no están ante nuestra consideración. Aunque la señora Cacho González intente combinar en una sola acción continua esos actos alegados de persecución y violación a la intimidad con la publicación en televisión de contenido difamatorio, la realidad es que se trata de conductas diferentes. Los actos alegados de publicaciones difamatorias son los pertinentes para resolver el recurso ante nos. Y, como ya discutimos, para muchas de esas publicaciones, el término para presentar la acción ya prescribió.

III

Aclarado que los casos de difamación se analizan bajo la doctrina de daños sucesivos, resta aplicar esa

norma a los daños reclamados por la señora Cacho González y resolver si las cartas que envió el 13 de agosto de 2013 constituyeron una reclamación extrajudicial que interrumpió el término prescriptivo.

En nuestra jurisdicción, el Artículo 1802 del Código Civil, 31 LPRA sec. 5141, según modificado por la doctrina constitucional, es la fuente de protección civil contra ataques difamatorios. Colón Pérez v. Televicentro, 175 DPR 690, 726 (2009). La ley especial existente, la Ley de libelo y calumnia de 1902, Ley de 19 de febrero de 1902, 32 LPRA secs. 3141-3149, ha perdido gran parte de su importancia desde la aprobación de la Constitución de Puerto Rico y sobrevive tan solo en cuanto es compatible con aquella. Ojeda v. El Vocero de P.R., 137 DPR 315, 327-328 (1994). Según el Artículo 1868 del Código Civil, 31 LPRA sec. 5298, la acción por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata el Artículo 1802, supra, prescribe al año desde que lo supo el agraviado. Ojeda v. El Vocero de P.R., supra, pág. 324.

La prescripción extintiva es un modo de extinción de los derechos que finaliza el derecho a ejercer determinada causa de acción. Maldonado Rivera v. Suárez y otros, 195 DPR 182, 192 (2016). Resulta de la ausencia de algún acto interruptor durante el plazo marcado por la ley y se fundamenta en la necesidad de que haya estabilidad en las relaciones y seguridad en el tráfico

jurídico. Íd. Nuestro Código Civil reconoce tres actos interruptores: (1) la correspondiente acción judicial; (2) la reclamación extrajudicial, y (3) el reconocimiento de la deuda por parte del deudor. Art. 1873 del Código Civil, 31 LPRA sec. 5303. Una vez se interrumpe la prescripción, el término prescriptivo comienza a transcurrir nuevamente. Maldonado Rivera, supra, pág. 193.

Los propósitos principales de una reclamación extrajudicial son "interrumpir el transcurso del término prescriptivo de las acciones; fomentar las transacciones extrajudiciales, y notificar, a grandes rasgos, la naturaleza de la reclamación". De León v. Caparra Center, 147 DPR 797, 803 (1999). Para que una reclamación extrajudicial logre tener efecto interruptor, lo esencial es que la reclamación sea una "manifestación inequívoca de qui[e]n, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo". Feliciano v. A.A.A., 93 DPR 655, 660 (1966). Véase, también, SLG García-Villega v. ELA et al., 190 DPR 799, 816 (2014); De León v. Caparra Center, supra. Para que la reclamación no sea un mero recordatorio sin efecto interruptor, debe demostrar, de forma más o menos tajante o apremiante, la decisión de obtener la acreencia. Zambrana Maldonado v. E.L.A., 129 DPR 740, 752-753 (1992) (cita omitida).

En Galib Frangie, pág. 567, establecimos los requisitos para que una reclamación extrajudicial

interrumpa el término prescriptivo: la oportunidad, la legitimación, la identidad y la idoneidad. En otras palabras, la reclamación debe realizarse antes de la consumación del plazo; por el titular del derecho; con relación entre el derecho reclamado y el afectado por la prescripción, y a través de un medio adecuado.

Los daños que la señora Cacho González reclamó surgieron, según alegó, de publicaciones en la televisión que comenzaron poco después de la muerte de su hijo. Aunque las fechas de cada programa de televisión se desconocen, y ello podrá ser objeto de descubrimiento de prueba en el Tribunal de Primera Instancia, se pueden determinar ahora las fechas para las que pudieran quedar acciones vigentes.

El niño Lorenzo González Cacho murió el 9 de marzo de 2010. El 14 de julio de 2010, la señora Cacho González envió una primera carta a Televicentro, con copia a Telemundo. Telemundo recibió otras cartas el 19 de enero de 2012 y el 23 de octubre de 2012. El 13 de agosto de 2013, Televicentro recibió una segunda carta y el señor Santarrosa recibió su primera carta. La demanda se presentó el 31 de julio de 2014.

En cuanto a Telemundo, solo están vigentes las causas de acción por actos cometidos durante el año precedente a la presentación de la demanda. Como Telemundo no recibió ninguna otra comunicación desde el 23 de octubre de 2012 hasta que la demanda se presentó en

julio de 2014, las cartas perdieron el 23 de octubre de 2013 cualquier efecto interruptor que pudieran haber tenido.

Por otro lado, si adscribimos el efecto interruptor a las cartas enviadas al señor Santarrosa y a Televicentro, estarían vigentes los reclamos relacionados con actos difamatorios cometidos por estos desde el 13 de agosto de 2012 en adelante. Aunque Televicentro recibió una carta anterior el 14 de julio de 2010, esta solo pudo tener efecto interruptor hasta el 14 de julio de 2011. Por eso, solo las cartas de 13 de agosto de 2013 generaron controversia y son las que se mencionaron en los errores señalados ante nos.

De entrada, precisamos que las cartas de 13 de agosto de 2013 solo fueron dirigidas al señor Santarrosa y a Televicentro. Por lo tanto, no pueden tener efecto contra otras personas. Véase Díaz de Diana v. A.J.A.S. Ins. Co., 110 DPR 471, 477 (1980) ("La reclamación no es efectiva si se hace en el vacío. Hay que hacerla al deudor. Es entonces cuando queda interrumpida extrajudicialmente la prescripción").

Para facilitar el análisis de esas cartas, reproducimos textualmente una de ellas. Ambas son esencialmente iguales; solo cambia el sujeto a quien se refieren.

13 de agosto de 2013

Sr. Antulio "Kobbo" Santarrosa

Apartado Postal ____
Carolina, Puerto Rico _____-____

Re: PLEITO POR DIFAMACIÓN Y LIBELO DE LA SRA. ANA CACHO, SRA. AMNERIS YVETTE GONZÁLEZ Y EL RESTO DE SU PARENTELA

Estimado señor Santarrosa:

La presente es para informarle que represento a la Sra. Ana Cacho, su señora madre, Sra. Amneris Yvette González, al padre de la Sra. Ana Cacho, así como al resto de la parentela de ésta, en una futura acción judicial por difamación y libelo, que habremos de iniciar contra la corporación que usted dirige y administra y que producía el Programa "SuperXclusivo", y contra usted en su carácter personal, por todos y cada uno de los daños sufridos por estos como consecuencia de las actuaciones libelosas y difamatorias que usted manifestó y expresó en el referido programa en múltiples ocasiones y hasta el momento mismo en que el programa cesó de ser transmitido por el Canal 4. Esa acción podrá ser iniciada en el tribunal local o en el tribunal federal sito en Puerto Rico o en cualquier tribunal federal de los Estados Unidos.

La presente tiene el propósito de interrumpir cualquier término de prescripción que pueda existir en el Código Civil de Puerto Rico o en cualquier otra legislación vigente a favor de ustedes, ya que en estos momentos por circunstancias ajenas a nuestra voluntad no podemos iniciar esa causa de acción.

Las acciones difamatorias y libelosas llevadas a cabo por usted, resultaron unas continuas una detrás de la otra desde el inicio en que se singularizó a la Sra. Cacho, en relación con el asesinato de su hijo.

Sin ningún otro particular al cual referirme, quedamos de usted.

Coincidimos con el foro apelativo intermedio en que estas cartas tuvieron efecto interruptor y que no era necesario que enumeraran cada programa alegadamente difamatorio. Las cartas de 13 de agosto de 2013 manifestaron "de forma inequívoca la intención de exigir

responsabilidad civil del demandado", González v. Wal-Mart, Inc., 147 DPR 215, 221 (1998), y "notificar[on], a grandes rasgos, la naturaleza de la reclamación". De León v. Caparra Center, supra, pág. 803. Las cartas estudiadas describieron con suficiencia el reclamo que habrá de llegar a los tribunales. También cumplieron con los requisitos mencionados: (1) oportunidad (se presentaron a tiempo para exigir resarcimiento por los daños producidos por publicaciones difamatorias luego de 13 de agosto de 2012, si alguna); (2) legitimación (las envió la representación legal de la familia de la señora Cacho González en representación de estos); (3) identidad (demuestran el interés de presentar una acción por difamación y libelo por las expresiones en contra de la señora Cacho González con relación al asesinato de su hijo), e (4) idoneidad (se enviaron por correo certificado a los supuestos responsables del daño alegado).

En un caso como este, en que se alegan daños por actos similares que se repitieron con frecuencia, la fecha específica de cada acto no es importante para efectos de la suficiencia de la reclamación extrajudicial, siempre y cuando se pueda verificar el cumplimiento con el requisito de oportunidad. Las cartas de 13 de agosto de 2013 alegaron que los actos difamatorios y libelosos duraron "hasta el momento mismo en que el programa cesó de ser transmitido", lo que

ocurrió en enero de 2013. Esa fecha es suficiente para constatar la oportunidad del reclamo, hecho en agosto de 2013. Por lo tanto, si ocurrieron actos difamatorios durante el año precedente al envío de la carta, la carta de agosto de 2013 interrumpió oportunamente el término prescriptivo para las causas de acción surgidas por actos difamatorios desde agosto de 2012 hasta enero de 2013, cuando el programa cesó de ser transmitido. De manera que, las fechas específicas de cada programa alegadamente difamatorio no fueron necesarias para que el reclamo de la señora Cacho González sea patente. Tampoco fueron necesarias para que el señor Santarrosa y Televicentro queden informados, a grandes rasgos, de la naturaleza de la reclamación. Véase De León v. Caparra Center, supra, pág. 803.

Televicentro y el señor Santarrosa señalaron, en sus respectivos alegatos, que las cartas solo hacen referencia al libelo y a la difamación, y no a las demás causas de acción que se incluyeron en la demanda. Tienen razón. Las cartas hacen referencia específicamente a daños supuestamente ocasionados por las publicaciones en la televisión. Por lo tanto, no debe quedar duda de que, en virtud del requisito de identidad, su efecto interruptor solo existe referente a las causas de acción por difamación y libelo.

No obstante, Televicentro también alegó que las cartas no formularon una reclamación detallada, que

contienen numerosos adjetivos conclusorios y que no identifican las expresiones supuestamente falsas de los programas ni cuál es la verdad que contradice las falsedades alegadamente publicadas. Señaló, en fin, que las cartas no expresaron hechos demostrativos de la causa de acción por difamación. Estos argumentos no tienen mérito. Como explicamos, las cartas de 13 de agosto de 2013 cumplieron con los requisitos jurisprudenciales vigentes. Sería injusto exigir más. Además, la información contenida en ellas es suficiente para que el señor Santarrosa y Televicentro advengan en conocimiento de la voluntad de la señora Cacho González de no perder su derecho y de la naturaleza de la reclamación que hace. No exigimos más.

IV

Como resultado, la demanda de la señora Cacho González está parcialmente prescrita. La publicación de noticias difamatorias provoca daños sucesivos, por lo que el término prescriptivo debe calcularse de manera individual para cada uno de los actos alegadamente difamatorios. Así pues, revocamos parcialmente la sentencia del Tribunal de Apelaciones. De esa sentencia, solo mantenemos vigente la conclusión de que las cartas de 13 de agosto de 2013 interrumpieron el término prescriptivo de los reclamos contra Televicentro y el señor Santarrosa, pero precisamos que solo para reclamos por actos ocurridos desde el 13 agosto de 2012.

Devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procesos en forma consecuente con lo expresado en esta Opinión.

Se dictará Sentencia en conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ana Y. Cacho González; Amneris Yvette González de Elías y Charles K. Elías, por sí y como miembros de la Sociedad Legal de Gananciales compuesta por ambos<br><br>    Apelados<br><br>        v.<br><br>Antulio "Kobbo" Santarrosa, su esposa Iris Lugo Cabrera y la Sociedad Legal de Gananciales compuesta por ambos; J&K Enterprises, Inc.; Televicentro of Puerto Rico LLC; Héctor Travieso López, por sí y en representación de la Sociedad Legal de Gananciales compuesta con su esposa Fulana de Tal; Telemundo of Puerto Rico Studios LLC; Es Televisión, Corp.; Silvia Hernández Rodríguez; y personas XYZ<br><br>    Apelantes | AC-2017-0018<br>AC-2017-0021<br>AC-2017-0023 |

SENTENCIA

En San Juan, Puerto Rico, a 19 de agosto de 2019.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, la demanda de la señora Cacho González está parcialmente prescrita. La publicación de noticias difamatorias provoca daños sucesivos, por lo que el término prescriptivo debe calcularse de manera individual para cada uno de los actos alegadamente difamatorios. Así pues, revocamos parcialmente la sentencia del Tribunal de Apelaciones. De esa sentencia, solo mantenemos vigente la conclusión de que las cartas de 13 de agosto de 2013 interrumpieron el término prescriptivo de los reclamos contra Televicentro y el señor Santarrosa, pero precisamos que solo para reclamos por actos ocurridos

desde el 13 agosto de 2012. Devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procesos en forma consecuente con lo expresado en esta Opinión.

Lo acordó y ordena el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió Opinión concurrente, a la que se unieron la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Feliberti Cintrón está inhibido.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ana Cacho Y. González y otros

     Apelados

         v.

Antulio "Kobbo" Santarrosa
Y otros

     Apelantes

Núm. AC-2017-018    *Apelación*
AC-2017-021
AC-2017-023

Opinión Concurrente emitida por el Juez Asociado señor COLÓN PÉREZ a la cual se unen la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ y el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico a 19 de agosto de 2019.

Por entender que no todos los casos de difamación deben analizarse automáticamente bajo la doctrina de daños sucesivos, respetuosamente concurrimos con el resultado al que llega una mayoría de este Tribunal en el día de hoy.

Y es que somos del criterio que, en casos de esta naturaleza, se debe dejar la puerta abierta para que en escenarios que así lo ameriten, **y cuando se desprenda de las alegaciones en la demanda**, el agraviado pueda instar una sola causa de acción en daños y perjuicios por difamación, por haberse configurado un daño continuado. Veamos.

I.

Los hechos medulares de este caso no están en controversia. Como bien se recoge en la Opinión que hoy emite este Tribunal, el 31 de julio de 2014, la señora Ana Y. Cacho González (en adelante, "señora Cacho González"), madre del fenecido niño Lorenzo González Cacho, presentó una demanda sobre daños y perjuicios, violación de derechos constitucionales, hostigamiento, persecución y difamación en contra del señor Antulio "Kobbo" Santarrosa (en adelante, "señor Santarrosa") y otros codemandados. En la misma, la señora Cacho González alegó que, a partir de la muerte de su hijo, los aquí demandados iniciaron una serie de rumores, insinuaciones, comentarios malintencionados y acusaciones falsas y difamatorias, contra ella y su familia. Adujo, además, que dichos comentarios y acusaciones se habían transmitido constantemente a través de los programas televisivos de los demandados durante los últimos cuatro (4) años. Por su parte, Telemundo y Televicentro presentaron mociones de desestimación fundamentadas en que la demanda estaba prescrita. A dicha moción de desestimación, la señora Cacho González oportunamente se opuso.

Evaluados los planteamientos de ambas partes, el Tribunal de Primera Instancia emitió una *Sentencia parcial* declarando ha lugar ambas mociones de desestimación, bajo el fundamento de que estaban prescritas. Posteriormente, el

foro apelativo intermedio revocó el dictamen del Tribunal de Primera Instancia y resolvió que unas cartas enviadas al señor Santarrosa y a Televicentro el 13 de agosto de 2013 interrumpieron el término prescriptivo para las causas de acción contra éstos. En cuanto a los demás codemandados, determinó que, como las alegaciones de la demanda describieron una conducta ininterrumpida de éstos que perduró hasta que se presentó la demanda, los reclamos no habían prescrito.

Llegada la controversia ante nos, en el día de hoy este Tribunal resuelve que la demanda de la señora Cacho González está parcialmente prescrita.[1] Ello, pues considera que la publicación de noticias difamatorias siempre provoca daños sucesivos, por lo que el término prescriptivo debe calcularse de manera individual para cada uno de los actos alegadamente difamatorios. Aunque estamos de acuerdo con el resultado al que hoy se llega, de esa última afirmación diferimos. Veamos por qué.

II.

A.

Como es sabido, la prescripción extintiva es una de las formas de extinción de un derecho por la inercia de una parte en ejercer el mismo dentro del término prescrito por ley. *Maldonado Rivera v. Suárez,* 195 DPR 182 (2016);

---

[1] De la sentencia del Tribunal de Apelaciones sólo se mantiene vigente la conclusión de que las cartas del 13 de agosto de 2013 interrumpieron la prescripción de los reclamos contra Televicentro y el señor Santarrosa, pero se especifica que sólo en cuanto a las reclamaciones por actos desde el 13 de agosto de 2012.

*Fraguada Bonilla v. Hospital del Auxilio Mutuo,* 186 DPR 365 (2012); *S.L.G. Serrano-Báez v. Foot Locker,* 182 DPR 824, 831 (2011). El objetivo que se persigue con esta forma de extinción de los derechos es impedir la incertidumbre de las relaciones jurídicas y sancionar la inacción del ejercicio de los derechos. *Orraca López v. ELA,* 192 DPR 31, 49 (2014); *COSSEC v. González López,* 179 DPR 793 (2010); *Santos de García v. Banco Popular,* 172 DPR 759 (2007). El requisito fundamental para que la prescripción tenga efecto, es el transcurso del término provisto por la ley. Art. 1861, Código Civil de Puerto Rico, 31 LPRA sec. 5291. *Rivera Ruiz v. Mun. de Ponce*, 196 DPR 410 (2016); *Orraca López v. E.L.A., supra; S.L.G. García-Villega v. E.L.A.,* 190 DPR 799 (2014); *Meléndez Guzmán v. Berríos López*, 172 DPR 1010 (2008).

Conforme a lo anterior, el Art. 1868 del Código Civil, 31 LPRA sec. 5298, dispone que las acciones de daños y perjuicios por culpa o negligencia a las que se refiere el Art. 1802, 31 LPRA sec. 5141, como las incoadas en el presente caso, tienen un término de prescripción de un (1) año.[2] *Col. Mayor Tecn. v. Rodríguez Fernández,* 194 DPR 635, 644 (2016); *Toro Rivera v. ELA,* 194 DPR 393, 415 (2015); *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra.* El punto de partida del término de prescripción de una acción de daños y perjuicios es la fecha en que el agraviado conoció el

---

[2] El Art. 1802 del Código Civil, *supra*, establece: "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".

daño, quién fue el autor del mismo, y los elementos necesarios para poder ejercitar su causa de acción. *Rivera Ruiz v. Mun. de Ponce, supra; Toro Rivera v. ELA, supra; Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra. Esta doctrina se conoce en nuestro ordenamiento jurídico como la teoría cognoscitiva del daño. *COSSEC et al. v. González López et al., supra; García Pérez v. Corp. Serv. Mujer,* 174 DPR 138 (2008); *Vera v. Dr. Bravo,* 161 DPR 308 (2004).

B.

Sobre el particular, es menester señalar que, en decisiones previas, este Tribunal ha reconocido la existencia de varios tipos de daños por los cuales se puede reclamar, entre éstos -- y en lo relacionado a las controversias que nos ocupan -- se destacan los daños sucesivos y daños continuados. Los daños sucesivos son:

> [U]na secuencia de reconocimientos de consecuencias lesivas por parte del perjudicado, las que se producen y manifiestan periódicamente, o aun continuamente, pero que se van conociendo en momentos distintos entre los que media un lapso de tiempo finito, **sin que en momento alguno sean previsibles los daños subsiguientes, ni sea posible descubrirlos empleando diligencia razonable.** Dicho en otras palabras, se trata de una secuencia de daños ciertos que se repiten (sin que sea necesario que sean idénticos en su naturaleza, grado, extensión y magnitud) **cuya repetición no es previsible en sentido jurídico ni son susceptibles de ser descubiertos empleando diligencia razonable.** (Énfasis suplido) *Santiago v. Ríos Alonso*, 156 DPR 181, 191 (citando H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Publicaciones JTS, 1986, V. II, pág. 644). Véanse también, *Rivera Ruiz v. Mun. de Ponce*,

> *supra*; *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149 (2007).

Esta clase de daños puede surgir de una secuencia de actos culposos o negligentes o de un acto único o varios actos coetáneos que, aunque no se repitan, tienen un efecto lesivo que se manifiesta de forma sostenida y duradera. Dichos actos no son previsibles y, de serlo, no dan lugar a la previsión de las consecuencias lesivas que producen, las cuales se conocen posteriormente en forma repetitiva o sucesiva. H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Publicaciones JTS, 1986, V. II, pág. 643. Debido a que los daños sucesivos no son "previsibles, a diferencia de los daños continuados, no podemos incluir como daño cierto el daño acaecido ni todos los posibles daños futuros que podrían acaecer". *Nazario v. E.L.A.*, 159 DPR 799, 808 (2003) (Sentencia).

Así, pues, cuando se trata de daños sucesivos, cada acto u omisión culposa o negligente produce un daño distinto, generando así cada acto una causa de acción independiente. *Rivera Ruiz v. Mun. de Ponce*, *supra*; *Rivera Prudencio v. Mun. de San Juan*, *supra*; *Santiago v. Ríos Alonso*, *supra*. Cónsono con la teoría cognoscitiva del daño, el término prescriptivo para el ejercicio de cada causa de acción comienza a transcurrir en el momento en que se

reconoce el respectivo daño particular. Brau del Toro, *op. cit.*, pág. 644.

Los daños continuados, por su parte, han sido definidos en múltiples ocasiones por este Tribunal como:

> [A]quéllos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca — por ser previsible — el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto. (Énfasis suplido) Brau del Toro, *op. cit.*, pág. 648.

Esta definición ha sido adoptada y reiterada por este Tribunal en múltiples ocasiones. Véanse, *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656; *Rivera Ruiz v. Mun. de Ponce*, *supra*; *Toro Rivera v. E.L.A.*, 194 DPR 393 (2015); *Rivera Prudencio v. Mun. de San Juan*, *supra*; *Santiago v. Ríos Alonso*, *supra*; *Galib Frangie v. El Vocero de P.R.*, 138 DPR 560 (1995). Según se desprende de la misma, los daños continuados se caracterizan por derivarse de un acto culposo como unidad y no como una pluralidad de daños particulares, como es el caso de los daños sucesivos. *Toro Rivera v. E.L.A.*, *supra*; *Rivera Prudencio v. Mun. de San Juan*, *supra*. Véanse también, J. Santos Briz, *La responsabilidad civil: derecho sustantivo y derecho procesal*, 7ma ed., San Juan, Ed. Montecorvo, 1993, T. I, pág. 1187, esc. 851; Brau del Toro, *op. cit.*, pág. 648.

Al respecto, y en reiteradas ocasiones, este Tribunal ha reconocido que los daños continuados tienen tres (3) rasgos distintivos, a saber: (1) éstos nacen de uno o varios actos culposos o negligentes que son imputables al mismo actor; (2) los daños ocasionados se manifiestan ininterrumpidamente; y (3) dichos daños, en conjunto, conforman un proceso perjudicial progresivo de carácter unitario. *Velázquez Ortiz v. Mun. de Humacao*, *supra*, págs. 665-666 (citando J. L. Lacruz Berdejo, *Elementos de Derecho Civil II: derecho de obligaciones*, 3ra ed., Barcelona, Ed. José María Bosch, 1995, V. 2, pág. 518).

A diferencia de los daños sucesivos, los continuados generan "una sola causa de acción que comprende todos los daños ciertos, tanto los actuales como los previsibles en el futuro, como consecuencia de una conducta torticera continua". *Rivera Ruiz v. Mun. de Ponce*, *supra*, pág. 417. Véanse también, *Velázquez Ortiz v. Mun. de Humacao*, *supra*; *Rivera Prudencio v. Mun. de San Juan*, *supra*. Por tal razón, el término prescriptivo de una causa de acción por daños continuados comienza a transcurrir en un momento distinto al de la acción por daños sucesivos. *Rivera Ruiz v. Mun. de Ponce*, *supra*. Véanse, además, *Rivera Prudencio v. Mun. de San Juan*, *supra*; *Santiago v. Ríos Alonso*, *supra*.

Recientemente, en *Rivera Ruiz v. Mun. de Ponce, supra,* esta Curia aclaró y pautó la norma aplicable para determinar cuándo comienza a transcurrir el periodo

prescriptivo para reclamar por este tipo de daños. Ello, luego de varios años de cierta confusión jurisprudencial respecto a si el término debía computarse desde que comienza la producción de los daños o a partir del momento en que se produce el resultado definitivo. Véanse, J. J. Álvarez González y J. J. Colón García, *Análisis del término 2016-2017: Responsabilidad Civil Extracontractual*, 87 Rev. Jur. UPR 601, 610 (2018); J. J. Álvarez González, *Análisis del término 2006-2007: Responsabilidad Civil Extracontractual*, 77 Rev. Jur. UPR 603, 621 (2008); J. J. Álvarez González, *Análisis del término 2006-2007: Responsabilidad Civil Extracontractual*, 72 Rev. Jur. UPR 615, 642 (2003).

Así pues, y luego de examinar minuciosamente la normativa relacionada a los daños continuados, este Tribunal estableció que el término prescriptivo para presentar una acción por daños de carácter continuado "comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o se produzca el resultado definitivo, lo que sea posterior", revocando así lo resuelto al respecto en *Galib Frangie v. El Vocero de P.R.*, supra. *Rivera Ruiz v. Mun. de Ponce*, supra, pág. 426. **En la referida opinión, también se reiteró que el carácter continuado de este tipo de daños recae sobre la causa -- entiéndase el acto u omisión -- que los produce y no en la lesión sufrida.** *Íd.,*

págs. 417-418. Véase, además, *Arcelay v. Sánchez*, 77 DPR 824 (1955).

## C.

Como se puede apreciar, al estudiar las definiciones de los denominados daños sucesivos y daños continuados que han sido adoptadas por nuestra jurisprudencia, salta a la vista una distinción esencial entre ambas clasificaciones: el elemento de *previsibilidad*.

Sobre este particular, el tratadista Herminio Brau del Toro, comentó lo siguiente:

> Enfatizamos que es rasgo determinante de [los daños sucesivos] el que **la repetición del daño no es previsible**. De serlo estaríamos frente a daños ciertos […]. Obsérvese que de ser previsible la repetición de los daños, tal conjunto de consecuencias lesivas conocidas constituiría una unidad de daños ciertos y no una pluralidad de daños repetitivos. El supuesto de pluralidad de consecuencias lesivas — que al ser conocidas constituyen una secuencia de daños — sólo puede darse si dichas consecuencias no son previsibles. (Énfasis suplido) Brau del Toro, *op. cit.*, pág. 643.

Esta caracterización es fundamental a la luz de la teoría cognoscitiva del daño, ya que, como mencionamos anteriormente, para establecer el comienzo del periodo prescriptivo es necesario determinar en qué momento el agraviado conoce o debió conocer que sufrió un daño, el causante del mismo y los elementos necesarios para ejercer su causa de acción. Así, pues, el carácter continuado o sucesivo de un daño particular, en gran medida, está

vinculado a la previsibilidad de la repetición de la conducta que lo causa.

En el contexto de la responsabilidad civil extracontractual "[l]a previsibilidad se considera el antecedente lógico y psicológico de la evitabilidad de un daño contrario a derecho y no querido". Santos Briz, *op. cit.*, pág. 46. En el caso de los daños sucesivos, la ocurrencia de episodios lesivos subsiguientes es especulativa y no previsible, debido a que existen dudas fundadas sobre la continuación de los actos u omisiones que causan los mismos. Véase, Brau del Toro, *op. cit.*, pág. 644. Al hablar de daños continuados, sin embargo, una vez se conocen las primeras consecuencias lesivas, razonablemente puede también conocerse el carácter continuo del daño, por lo que la repetición de estos episodios se considera previsible.

Este elemento de previsibilidad ha sido definido con particular precisión por la Juez Asociada señora Rodríguez Rodríguez en su opinión de conformidad en *Umpierre Biascoechea v. Banco Popular*, 170 DPR 205, 215 (2007) (Sentencia). Allí, la Juez Rodríguez Rodríguez enumeró tres (3) factores característicos de los daños continuados, a saber: (1) uno o varios actos negligentes o culposos; (2) que unidos entre sí causen daños ininterrumpidos y sostenidos; y (3) que sea previsible que los daños continúen en el futuro. *Íd.*, pág. 215 (Op. de conformidad,

Juez Asociada Rodríguez Rodríguez). Al elaborar sobre la previsibilidad de que los daños continúen en el futuro ésta expresó lo siguiente:

> Este tercer criterio supone que existen unos daños "actuales" junto a otros que son "previsibles", aunque estos últimos no se verifiquen. Ello hace entonces que todos los daños sean ciertos. **La certeza se fundamenta en que la afectada, una vez advierte de la naturaleza de los agravios ya experimentados y constata que éstos tienen un patrón y están unidos por ser el resultado de una misma causa, logra comprender y puede razonablemente prever que de mantenerse vigente la causa continuará sufriendo daños de la misma naturaleza.** (Énfasis suplido) *Íd.*

No obstante, cabe señalar que ya en *Rivera Prudencio v. Mun. de San Juan*, *supra*, este Tribunal había aplicado este criterio de previsibilidad en el contexto de una reclamación por daños alegadamente producidos a la esposa de un empleado del Municipio de San Juan por una serie de traslados sufridos por este último. En esa ocasión, resolvimos que los daños surgidos de cada traslado fueron de carácter sucesivo, pues no era jurídicamente previsible que ocurrieran, toda vez que las consecuencias lesivas se manifestaron cada vez que ocurrió uno de esos traslados. *Íd.* Véase también, Álvarez González, *Análisis del término 2006-2007: Responsabilidad Civil Extracontractual*, *supra*, pág. 622. El Tribunal razonó que se trataba de "una serie de daños ciertos, individuales y concretos, los cuales no hubiesen podido ser previstos por el más diligente de las personas prudentes y razonables". *Rivera Prudencio v. Mun.*

*de San Juan*, *supra*, pág. 170. Concluyó que, "no eran jurídicamente previsibles, sino que, por el contrario, la creencia de que ocurrirían subsiguientes traslados era meramente especulativa". *Íd.*

III.

Dicho ello, es menester recordar también que en nuestra jurisdicción la protección contra la expresión difamatoria surge de lo dispuesto en el Art. II, Sec. 8, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA Tomo 1. Es en esta disposición constitucional donde se consagra el derecho a la protección contra ataques abusivos a la honra, la reputación y la vida privada o familiar. *Ojeda v. El Vocero de P.R.*, 137 DPR 315 (1994); *Porto y Siurano v. Bentley P.R., Inc.*, 132 DPR 331 (1992); *Clavell v. El Vocero de P.R.*, 115 DPR 685 (1984).

De conformidad con lo anterior, y al amparo del Art. 1802 del Código Civil de Puerto Rico, *supra*, este Tribunal ha reconocido una causa de acción en daños y perjuicios por libelo y difamación. *Meléndez Vega v. El Vocero de P.R.*, 189 DPR 123 (2013); *Colón Pérez v. Televicentro de P.R.*, 175 DPR 690 (2009); *Ojeda v. El Vocero de P.R.*, *supra*. Dicha causa de acción se manifiesta en dos (2) vertientes, según las cuales el *quantum* de prueba varía: la de **figura privada** y la de **figura pública**. *Meléndez Vega v. El Vocero de P.R.*, *supra*. Véanse también, *Colón Pérez v. Televicentro de P.R.*, *supra*; *Pérez v. El Vocero de P.R.*, 149 DPR 427

(1999); *Meléndez v. El Vocero de P.R.*, 144 DPR 389 (1997); *Garib Bazain v. Clavell*, 135 DPR 475 (1994).

En cuanto a la dicotomía entre la figura pública y la privada, hemos establecido que su fundamento racional estriba en que la figura pública, por lo general, tiene mayor acceso a los medios de comunicación para refutar la publicación difamatoria y contrarrestar su efecto. Por otro lado, se presume que ésta se ha expuesto voluntariamente a ser objeto de un juicio más riguroso por el público. *Torres Silva v. El Mundo, Inc.*, 106 DPR 415 (1977); *Garib Bazain v. Clavell*, *supra*; *Villaneuva v. Hernandez Class*, 128 DPR 618 (1991); *Clavell v. El Vocero de P.R.*, *supra*. Ahora bien, dicha presunción "no se justifica en el caso de las figuras privadas que no se han lanzado a la palestra pública y cuyo interés en la reputación personal no ha sido menguado por ninguna actuación voluntaria de su parte". *Torres Silva v. El Mundo, Inc.*, *supra*, pág. 422.

Así pues, para que prospere una causa de acción por difamación, en el caso de una figura privada, la persona perjudicada debe alegar y, posteriormente, probar que: (1) la información publicada es difamatoria y falsa; (2) se publicó de forma negligente; y (3) le produjo daños reales. *Pérez v. El Vocero de P.R.*, *supra*; *Garib Bazain v. Clavell*, *supra*; *Méndez Arocho v. Vocero de Puerto Rico*, 130 DPR 867 (1992); *Ocasio v. Alcalde Mun. de Maunabo*, 121 DPR 37 (1988). En cambio, en el caso de una figura pública se le

requiere, además, establecer que la información difamatoria fue publicada con malicia real, es decir, a sabiendas de que era falsa o con grave menosprecio de la verdad. *Meléndez Vega v. El Vocero de P.R.*, supra; *Pérez v. El Vocero de P.R.*, supra; *Garib Bazain v. Clavell*, supra.

IV.

A.

En el presente caso nos corresponde determinar si las causas de acción de la señora Cacho González y los demás demandantes para reclamar por los alegados daños provocados por las publicaciones hechas por la parte demandada antes del año previo a la presentación de la demanda habían prescrito al momento de incoar su reclamación. Para ello es necesario determinar si los daños alegados por éstos son de carácter sucesivo o continuado.

Según la señora Cacho González y los demás demandantes, los daños producidos por las expresiones de los referidos programas de televisión son de carácter continuado. No obstante, como hemos mencionado, para llegar a dicha conclusión se requiere que examinemos si la continuación de las publicaciones en cuestión era jurídicamente previsible.

Realizado dicho examen, el cual incluyó un análisis de las alegaciones hechas por la señora Cacho González en su demanda, entendemos que éstas no lograron establecer que era razonablemente previsible que la conducta incurrida por el señor Santarrosa y demás codemandados habría de repetirse.

En consecuencia, y a la luz de las definiciones antes dadas, los daños alegados son de carácter sucesivo.

Coincidimos con la Opinión del Tribunal en que, en este caso particular, la probabilidad de que la conducta lesiva se repitiera era meramente especulativa. Ello es así, pues de las alegaciones incluidas en la demanda no se desprende que, en el momento en que se realizó cada publicación, los peticionarios razonablemente pudieron prever que dicha conducta se repetiría, lo cual hubiese convertido el daño en uno cierto compuesto por elementos de daño actual ya ocurrido y de daño futuro previsible.

Ante la falta de previsibilidad de que los daños eran susceptibles de repetirse, no podemos concluir que los actos ante nuestra consideración son de carácter continuado. Por consiguiente, las consecuencias lesivas de los daños alegados se manifestaron en el momento en que se hizo cada publicación y ocurrió cada incidente. Esto torna los hechos ante nuestra consideración en una "secuencia de daños ciertos que se repiten […] cuya repetición no es previsible en sentido jurídico ni son susceptibles de ser descubiertos empleando diligencia razonable". Brau del Toro, *op. cit.*, p. 644. *Rivera Ruiz v. Mun. de Ponce*, *supra*; *Rivera Prudencio v. Mun. de San Juan*, *supra*; *Santiago v. Ríos Alonso*, *supra*. Al tratarse de daños sucesivos, donde cada daño produce una causa de acción independiente, el periodo prescriptivo comenzó a transcurrir en el momento en que se hizo cada

publicación o sucedió cada incidente. Siendo ello así, las causas de acción para reclamar por los daños ocasionados por las publicaciones e incidentes ocurridos antes del año previo a la presentación de la demanda están prescritas. En cuanto a las acciones contra Televicentro y el señor Santarrosa, coincidimos con la Opinión del Tribunal en que el término prescriptivo fue interrumpido extrajudicialmente para las reclamaciones por actos ocurridos a partir del 12 de agosto de 2012.

B.

Ahora bien, como ya mencionamos, y contrario a lo que se establece en la Opinión del Tribunal, **entendemos que una serie de publicaciones difamatorias podría, en determinadas circunstancias, dar lugar a que la parte afectada, "una vez adviert[a] de la naturaleza de los agravios ya experimentados y constat[e] que éstos tienen un patrón y están unidos por ser el resultado de una misma causa, logr[e] comprender y pued[a] razonablemente prever que de mantenerse vigente la causa continuará sufriendo daños de la misma naturaleza"**. (Énfasis suplido) *Umpierre Biascoechea v. Banco Popular*, *supra*, Op. de conformidad, Juez Asociada señora Rodríguez Rodríguez. Es decir, daños que se consideran continuados.

Esa puerta no la podemos cerrar. Por ello, concurrimos.

C.

Por último, no nos parece correcto -- como se sugiere en la Opinión Mayoritaria -- concluir que en *Galib Frangie v. El Vocero de P.R.*, 138 DPR 560 (1995), este Tribunal clasificó todos los casos de difamación como casos de daños sucesivos. En lo pertinente a esta controversia, en el referido caso se dilucidó si una carta, que interrumpió el término prescriptivo de las causas de acción del señor Jussef M. Galib Frangie por una serie de artículos alegadamente difamatorios, también interrumpió el término para las causas de acción de su esposa, la señora Judith Brás, y de la sociedad legal de gananciales compuesta por ambos. Dicha carta fue enviada por el representante legal del señor Galib Frangie y la misma no hacía referencia a su esposa, ni a la sociedad de gananciales.

Según se comenta en *Galib Frangie v. El Vocero de P.R., supra*, para evadir la conclusión que esto último conllevaba, el señor Galib Frangie y la señora Brás argumentaron que los artículos constituían un daño continuado. Es en ese contexto, y no otro, que el Tribunal analizó si los daños producidos por los mencionados artículos eran sucesivos o continuados.

En el precitado caso, el Tribunal concluyó que **de las alegaciones contenidas en la demanda** (principio que adoptamos en nuestra Opinión Concurrente) podía inferirse que el término prescriptivo de las acciones correspondientes a la señora Brás y la sociedad legal de gananciales comenzó

a decursar en la fecha de publicación de cada uno de los artículos. Cabe señalar que, aunque en *Galib Frangie v. El Vocero de P.R.*, *supra*, se expresó que los daños no eran continuados, no se discuten las características de los daños sucesivos. La discusión sobre este particular estuvo más bien dirigida a establecer que en los casos de daños continuados lo determinante es el momento en que comienza la producción de los daños, lo cual, como correctamente señalamos en *Rivera Ruiz v. Mun. de Ponce*, 196 DPR 410 (2016), constituyó un *obiter dictum*. Si bien *Galib Frangie v. El Vocero de P.R.*, *supra*, sólo fue revocado en cuanto a lo resuelto sobre cuándo comienza a transcurrir el término prescriptivo en casos de daños continuados, lo cierto es que en dicho caso la argumentación no fue mucho más allá de establecer esa norma.

V.

Es, pues, por todo lo anterior, que -- como ya mencionamos -- respetuosamente concurrimos con el resultado al que llega hoy este Tribunal.

Ángel Colón Pérez
Juez Asociado